**In re Stephen L. GREGORY, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 01–BG–906.**

District of Columbia Court of Appeals.

Submitted Jan. 15, 2002.

Decided Jan. 31, 2002.

---

Before SCHWELB and FARRELL, Associate Judges, and PRYOR, Senior Judge.

PER CURIAM.

In its attached Report and Recommendation, the Board on Professional Responsibility has recommended that Stephen L. Gregory, a member of our Bar, be disbarred for misappropriation, in violation of Rule 1.15(a) of the Rules of Professional Conduct, and for failure to notify medical providers of his receipt of funds to which the providers were entitled, in violation of Rule 1.15(b). For reasons explicated in considerable detail in its Report, the Board concluded that Gregory's conduct was

reckless, rather than simply negligent, and that disbarment was therefore the appropriate remedy.[1]

Neither Bar Counsel nor Gregory has excepted to the Board's recommendation. This court is required to

adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.

D.C. Bar R. XI, § 9(g)(1). "The deferential standard mandated by this provision becomes even more deferential where, as here, the attorney has failed to contest the proposed sanction." *In re Goldsborough*, 654 A.2d 1285, 1288 (D.C.1995). Applying this standard, we agree, substantially for the reasons stated by the Board, that disbarment is the appropriate remedy. *See, e.g., In re Anderson*, 778 A.2d 330 (D.C. 2001) (collecting authorities); *In re Pels*, 653 A.2d 388, 395–98 (D.C.1995). Accordingly, Stephen L. Gregory is hereby

*Disbarred.*[2]

ATTACHMENT

*REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY*

Bar Counsel charged Respondent with violations of Rule 1.15(a) (misappropriation), Rule 1.15(b)(failure to notify third parties of receipt of funds to which they were entitled), and Rule 5.3(b)(failure to supervise a nonlawyer adequately). The charges were brought as a result of Re-

---

1. The Hearing Committee had found that Gregory's conduct constituted simple negligence. The Committee recommended that Gregory be suspended for one year, with reinstatement conditioned on payment of the amounts due to the medical providers, and on proof of Gregory's fitness to practice.

2. We direct Mr. Gregory's attention to the requirements of D.C. Bar R. XI, § 14(g), and to the effect of noncompliance on his eligibility for reinstatement as set forth in § 16(c).

spondent's failure to pay the medical bills of a client after he had received and cashed a settlement check for the client.

After a hearing at which Respondent and other witnesses testified, the Hearing Committee made thorough findings of fact and conclusions of law. The Hearing Committee concluded that Bar Counsel had proven that Respondent violated Rules 1.15(a) and 1.15(b), but had not proven that Respondent failed adequately to supervise a nonlawyer, in violation of Rule 5.3(b). The Hearing Committee also concluded that Respondent's misappropriation was the result of mere negligence. The Committee recommended a sanction of one year suspension, with reinstatement conditioned on payment of the amounts due the medical providers and on a showing of fitness.

Respondent has not excepted to the Hearing Committee report and did not file a brief before this Board. Bar Counsel excepted to the Hearing Committee recommendation, both as to the finding of no violation of Rule 5.3(b) and as to the determination that Respondent's misappropriation was the result of mere negligence. Bar Counsel urges that Respondent's misappropriation was reckless and, accordingly, that a sanction of disbarment is required.

Bar Counsel endorses the Hearing Committee's finding of fact and adopts them as its statement of facts before this Board. We also adopt those findings and incorporate them into this Report, although we disagree with the Hearing Committee as to whether those facts warrant a finding of negligent or reckless misappropriation. *See In re Micheel,* 610 A.2d 231, 234 (D.C.1992)(adopting Board's recommendation of reckless misappropriation; Board accepted undisputed facts found by Hearing Committee, but disagreed with Hearing Committee's conclusion that conduct was negligent).

Briefly, the misconduct in this case arose from Respondent's manner of handling the proceeds of an insurance settlement. Respondent's contingent fee agreement with his client, Mr. Carroll, authorized Respondent to deduct from insurance reimbursements all expenses and costs incurred in connection with the claims, including those for medical and hospital reports. In addition, Respondent signed Assignment and Authorization Agreements, entered into by his client, Mr. Carroll, and two doctors, Dr. Green and Dr. Joseph. Each Agreement authorized and directed Respondent to deduct and pay from proceeds of any recovery in the case the money owed the doctor by Respondent's client. The Agreements also required Respondent to notify the named doctor, in writing, within ten days of his request for information regarding the status of the client's claim.

The evidence presented at the hearing was that on or about December 24, 1994, Respondent received a settlement check in the amount of $7,500 payable to Mr. Carroll and to Respondent. The check was deposited in Respondent's NationsBank IOLTA Account on December 27, 1994. Respondent had a settlement sheet prepared, showing the amount to be distributed to the client and the amount due for expenses, including the specific amounts due the medical providers. Mr. Carroll was paid by Respondent's check, dated December 30, 1994.

None of the medical providers was paid for its services to Mr. Carroll. On May 31, 1995, the balance in the NationsBank account dipped below $2,398.15, the amount due the medical providers. On June 1, 1995 and June 9, 1995, Respondent wrote checks on the NationsBank Account in the amount of $1800 and $300, reducing the

balance in the account to $104.11. At no point after May 31, 1995, did the balance in the NationsBank Account exceed $2,398.15.

Dr. Green sent his bill for $350 to Respondent on July 27, 1994. When he was not paid, he sent a bill directly to Mr. Carroll. On May 10, 1995, Mr. Carroll advised Dr. Green that the case had settled and that the settlement sheet indicated that Dr. Green had been or was to be paid out of the settlement. On May 10, 1995, Dr. Green called Respondent and left a message. There is no evidence that Dr. Green made any other attempts to contact Respondent.

Dr. Joseph's fee was $1,679.50. That figure was indicated on the settlement sheet. In February, 1995, Dr. Joseph's office called Respondent to find out the status of Mr. Carroll's case and left a message. Dr. Joseph's office made additional efforts to contact Respondent in August, 1995. On September 27, 1995, Dr. Joseph's office wrote to Respondent to request a report on the status of the case. Respondent did not respond to the efforts by Dr. Joseph to reach him. He testified that he believed that Dr. Joseph had been paid.

In October, 1996, Dr. Joseph's account manager spoke to Respondent, who said the case had settled. The account manager told him that Dr. Joseph had not been paid and Respondent said that he would check the files. On August 7, 1997, Dr. Joseph wrote to Respondent, requesting that a check be mailed to him. When Respondent did not answer the letter, Dr. Joseph's office called and learned that the telephone had been disconnected. He then complained to Bar Counsel in September, 1997.

In response to Bar Counsel's inquiries, Respondent stated that he believed the bills had been paid, but that he could find no record of the payments. He offered to make arrangements with Dr. Joseph for payment of the bill as soon as possible. On February 20, 1998, Dr. Joseph wrote to Respondent, requesting payment within three months. In April, 1998, Dr. Joseph's office contacted Respondent. Respondent stated that he had turned his file over to Bar Counsel and wanted to wait until he got his file back before paying. As of the date of the hearing, neither doctor had been paid.

Respondent's explanation for his failure to pay the medical providers or to retain sufficient funds in escrow to do so was that he had relied on an individual, Sylvia Turner, whom he had hired to handle his financial matters; he believed that she had paid the medical providers. Ms. Turner did not testify. Respondent testified that he had entrusted his financial matters to Ms. Turner, whom he hired at about the time he began his representation of Mr. Carroll, in June, 1994. Respondent taught her to prepare settlement sheets and handle the financial aspects of personal injury cases. Ms. Turner worked for Respondent until the Spring or Summer of 1995, when she was hospitalized in connection with her pregnancy. During that some period, she and Respondent were living together.

Respondent testified that he experienced no difficulties with Ms. Turner's work and had no reason not to trust her. It was his practice not to close a case until the necessary parties had been paid. Because Mr. Carroll's case had been closed in December, 1994, he believed that the medical providers had been paid. He did not review the file to make sure that everything was in order.

Respondent did not review his bank statements or otherwise check to see whether Ms. Turner was doing her job properly. It was Ms. Turner's job to re-

view the bank statements. Respondent's practice was to withdraw from the account the money owed him, so that what was left should be the amount needed to pay clients and third parties. In fact, beginning in July 1994 and continuing until May, 1995, Ms. Turner had been depleting the account with checks written to herself. Ms. Turner wrote checks on the NationsBank Account payable to herself, some of which were authorized by Respondent for supplies and services. On other checks written to herself, Ms. Turner apparently forged Respondent's name. She also had been negotiating reductions in medical charges and keeping the adjustment. Ms. Turner wrote the last unauthorized check on April 18, 1995, prior to the date when the balance in the account went below the amount needed to pay the medical providers.

In January or February, 1995, Ms. Turner became pregnant with Respondent's child. Sometime in early 1995, Respondent hired another assistant, Kendra Kerr, to assist with the office management. At some point in April or May, 1995, Ms. Kerr called Respondent to tell him that Ms. Turner had come into the office and had written checks on the NationsBank Account. Respondent realized that Ms. Turner was writing checks without authority. He placed the checks in a safe deposit box so that only he had access to them.

Despite learning of Ms. Turner's unauthorized writing of checks in April or May, 1995, Respondent testified that he did not become aware that anything might be wrong with the payment of third parties until sometime later. At one point, he testified that he did not know anything was wrong until he received Dr. Joseph's letter, which was in August of 1997. He also testified that he tried to go back to his office in January, 1997, but he could not make sense of the bank records and gave

up. He said that after receiving Dr. Joseph's letter, he spoke with Ms. Turner, who assured him that the doctor had been paid.

It was Respondent who wrote the checks that caused the NationsBank Account to dip below the amount he needed to pay Mr. Carroll's medical providers. Respondent wrote the checks, believing that the medical providers had been paid.

The Hearing Committee credited Respondent's testimony. The Hearing Committee found that Respondent had misappropriated the money due the medical providers, because he allowed the funds in the NationsBank Account to dip below the amount required to pay Mr. Carroll's medical providers. The Committee also found that Respondent violated Rule 1.15(b), because Respondent failed to notify the medical providers of the settlement and failed to pay them the amounts they were owed.

The Committee refused to find a violation of Rule 5.3(b), which requires "a lawyer having direct supervisory authority over [a] nonlawyer [to] make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer." In the Committee's view, Bar Counsel's case "rests on a single situation in which Respondent failed to adequately supervise a subordinate." HC at 19–20. The Hearing Committee found no clear and convincing evidence that Respondent failed to adequately supervise others or that there were any other inadequacies in Respondent's supervision of Ms. Turner.

In addressing sanction, the Committee found that the misappropriation was negligent. The Hearing Committee cited the following factors: 1) the misappropriation resulted from Respondent's mistaken belief that Mr. Carroll's bills had been paid; 2) it related to a single transaction; 3) it

resulted from acts of an assistant Respondent reasonably believed to be reliable and trustworthy; 4) there were no other financial irregularities in his accounts prior to the misappropriation; 5) there is no evidence that Respondent withdrew funds from the NationsBank Account when he knew or had reason to believe that the account might be overdrawn as a result; 6) there is no evidence that Respondent failed to maintain contemporaneous records of client funds; 7) there is no evidence that Respondent engaged in any improper financial transactions with respect to the NationsBank Account; and 8) there is no evidence that Respondent tried to cover his tracks or engaged in deceptive conduct. HC at 25.

The Hearing Committee recommended a sanction of one year suspension, with reinstatement conditioned on payment of the amounts due the medical providers and on a showing of fitness.

Bar Counsel takes issue with the Hearing Committee's conclusion as to the Rule 5.3(b) violation and as to its recommended sanction.

We agree with the Hearing Committee that Respondent engaged in misappropriation[1] and that he violated Rule 1.15(b) when he failed to notify medical providers that he had money to which they were entitled. The most significant question before us is whether these facts establish that Respondent was reckless in his lack of attention to whether the medical providers had been paid and in ensuring that there were sufficient funds in the NationsBank Account to pay them. Respondent repeatedly insisted that he had no reason to doubt that Ms. Turner was handling the cases properly and, therefore, that his failure to review the cases and the account balance himself should not be deemed reckless. The Hearing Committee credited Respondent's testimony and found that Respondent'[s] misappropriation was the result of mere negligence.

We disagree with the Hearing Committee as to the significance of the undisputed facts. Respondent had an obligation to safeguard money he held in trust for his client and his client's medical providers. As the Commentary to the Annotated Model Rules of Professional Conduct explains, "[c]ourts view holding money in trust for clients as a nondelegable, fiduciary responsibility that cannot be transferred and is not excused by ignorance, inattention, incompetence, or dishonesty. Although lawyers may employ nonlawyers to assist in fulfilling this fiduciary duty, lawyers must provide adequate training and supervision to ensure that ethical and legal obligations to account for clients' monies are being met." Ann. Model Rules of Prof'l Conduct R. 5.3 cmt (1983)(Supervision of Trust Account Management).

We agree with Bar Counsel that the undisputed facts on this record demonstrate that Respondent was reckless in his

---

**1.** This is not a case where all of the conduct resulting in a misappropriation was caused by someone else. Respondent wrote checks on the account that depleted the escrowed funds and he failed to act where he had a duty to act-he ignored repeated requests by the medical providers for information and payment. Thus, we need not address the circumstances under which a lawyer may be found to have engaged in "unauthorized use" of entrusted funds where his only conduct was a failure adequately to supervise someone to whom he has delegated responsibility for entrusted funds. *See* Rule 5.3(c)(lawyer responsible for conduct of nonlawyer if he knew of the conduct and ratified or failed to prevent or mitigate harm); *In re Moore,* 704 A.2d 1187 (D.C. 1997)(per curiam)(misappropriation found where lawyer responsible for and aware of checks written by wife, who managed the trust account); *In re Osborne,* 713 A.2d 312 (D.C.1998)(per curiam)(Respondent knew of bookkeeper's practices and took no action to correct them).

attention to the money he was required to safeguard for his client's medical providers. Respondent abdicated his responsibility for those funds to a non-lawyer. He did not check the account balance or the case records to make sure that entrusted funds were secure and delivered to the medical providers, even after he was told that his assistant was writing unauthorized checks on the account. He wrote checks himself on the account without checking the bank records. He was advised repeatedly by at least one of the medical providers that payment had not been made and he did not check records to determine the source of the problem. When he did check the bank records in January of 1997, he gave up when he could not evaluate them. Even after there can be no doubt that Respondent was fully aware that the medical providers had not been paid, by August of 1997, he still did not pay them.

As the Hearing Committee recognized, Respondent's unwillingness to doubt his assistant may be understandable, given his personal relationship with her. We do not believe that his personal relationship can excuse his failure to take the responsibility he was ethically obligated to take to ensure the safety of entrusted funds. But even if it could explain Respondent's writing of checks that drew down the trust account in June of 1995, Respondent's continued inattention to the doctors' requests for payment and to his own records would warrant a finding of recklessness and, ultimately, intent. *See In re Utley,* 698 A.2d 446, 450 (D.C.1997)(negligence ripened into reckless misappropriation when lawyer refused to return money once she became aware that she owed it).

We find that Respondent's misappropriation was the result of recklessness. Respondent's actions demonstrate an unacceptable disregard for the safety and welfare of entrusted funds. Based on the same evidence, of lack of supervision and independent verification of the records and case files, even after receiving notice that his assistant was writing unauthorized check[s] on the IOLTA account, we find that Bar Counsel has met her burden of proving that Respondent violated Rule 5.3(b). Because we conclude that Respondent engaged in reckless misappropriation, we recommend that he be disbarred. *In re Pels,* 653 A.2d 388 (D.C.1995); *In re Micheel,* 610 A.2d 231 (D.C.1992).

BOARD ON PROFESSIONAL RESPONSIBILITY

By: <u>Elizabeth G. Taylor</u>

    Elizabeth G. Taylor

Dated: <u>July 16, 2001</u>

All members of the Board concur in this Report and Recommendation except Mr. Wolfson, who did not participate.