In re Margie A. UTLEY, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals.

No. 96–BG–1004.

District of Columbia Court of Appeals.

Argued April 10, 1997.
Decided July 31, 1997.

---

Samuel McClendon, Washington, DC, for respondent.

Julia L. Porter, Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for petitioner, the Office of Bar Counsel.

Before SCHWELB and KING, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

This case presents the question whether a conservator's protracted mishandling of estate funds constitutes misappropriation and, if so, whether it resulted from more than simple negligence. Respondent Margie A.

Utley waited twenty-one months to repay a mistakenly duplicated fee despite notification from an auditor and repeated court requests. She also paid herself the fee and two annual commissions before obtaining required court approval. The Hearing Committee determined that this misconduct constitutes misappropriation and was "at the very least reckless." A majority of the Board on Professional Responsibility agreed, concluding that "more than simple negligence was involved," and that disbarment is therefore required. Dissenting members of the Board countered that disbarment is too harsh because "her acts constituted simple negligence or its equivalent" and hence do not warrant "the most severe sanction that can be imposed." Respondent contends her actions "did not result from recklessness, but if anything, procrastination and mental paralysis brought about by stress." Bar Counsel agrees with the Board majority. We hold that respondent's misconduct constitutes misappropriation and resulted from more than simple negligence.[1] We therefore adopt the recommended sanction of mandatory disbarment.

From 1985 to 1991, respondent acted as conservator of the estate and person of Mary B. Cline. That complicated episode is defined by the repeated taking of unapproved funds and a prolonged refusal to comply with repeated court requests. Details of the pertinent events are well documented in the Board's Report and Recommendation. We set forth below the most troublesome occurrences to illustrate why we are compelled to characterize respondent's actions as more than simple negligence. Respondent, who failed to appear before the Board, takes no exception to these factual findings.

## I. Respondent's Misconduct

The Probate Division of the Superior Court approved each of the first four annual

---

1. We also adopt the Board's conclusion that respondent's misconduct violated additional disciplinary rules. We therefore agree with the following summary by the Board in its Report and Recommendation:

   Bar Counsel has charged the Respondent with several violations of the Code of Professional Responsibility and the Rules of Professional Conduct. Three of these violations are clearly established. Respondent violated DR 9–103(B)(3) and Rule 1.15(b), failure to maintain complete records of trust funds and to render accounting regarding such funds. She also clearly violated Rule 1.15(b), failure to deliver trust funds. Finally, because her activities hampered the administration of this estate and caused the court unnecessary hearings, she clearly violated DR 1–102(A)(5) and Rule 8.4(d), conduct seriously prejudicial to the administration of justice.

accounts respondent filed between 1985 and 1989. Problems surfaced later with an unapproved fee in 1989, unapproved commissions on the fifth account and the sixth and final account, and unauthorized retention of estate funds after respondent resigned as conservator.

Although respondent petitioned the court for advance approval of the 1989 fee, she nonetheless paid herself $1223.42 without approval on August 29, 1989. Upon eventual receipt of court approval on November 30, 1989, respondent inadvertently paid herself $1223.42 again. This double payment was apparently an honest mistake resulting from respondent's inadequate records. Respondent then filed the fifth account and took a commission on it before attaining the court's approval of the account or the commission.

Ms. Spratley, an auditor from the Register of Wills, discovered the 1989 double payment during her review of respondent's fifth account. Spratley requested explanation for the unapproved August 1989 payment, the unapproved commission on the fifth account, and other deficiencies in an October 11, 1990, letter to respondent. When respondent failed to explain all the deficiencies adequately within thirty days, the court sent her a delinquency notice requesting a more complete response in fourteen days. Respondent failed to comply with the court's request.

With the fifth account still unapproved, respondent instead filed a petition on March 28, 1991, for leave to resign as conservator. On the condition that she file a final account in ninety days, the court granted the motion and appointed a successor conservator.

On May 23, 1991, the court wrote respondent a third time about the unapproved fifth account, warning her that unless she resolved all deficiencies within ten days, the court would be forced to hold a summary hearing. Respondent again failed to comply with the court's request.

She did, however, file the sixth and final account on June 11, 1991. In addition, she paid herself without obtaining court approval for a third time. She also turned over most of the estate funds to the successor conservator on June 17, 1991, but improperly retained over $5000 to cover additional unauthorized costs, commissions, and fees—despite already having paid herself unapproved commissions on the fifth account and the sixth and final account.

Respondent eventually replied to Spratley's nine-month-old inquiry, explaining that the authority for her August 1989 fee of $1223.42 was the court's subsequent November 1989 approval. Spratley then requested an explanation for the double payment, and by requirement letter dated August 1, 1991, asked respondent to repay the duplicate fee and the unapproved commission on the fifth account. When respondent failed to respond in thirty days, the court sent another notice requesting a response within fourteen days. She again failed to comply with the court's request.

The court reacted by issuing a Notice of Summary Hearing. Although respondent acknowledged her error and promised on November 26, 1991, to redeposit the duplicate fee and the unapproved commission on the fifth account, she failed to do so. The court issued still another notice requesting resolution of all requirements relating to the sixth and final account by January 9, 1992. Respondent again failed to comply.

The court issued yet another notice requesting respondent to complete all requirements by February 20, 1992, including return of the duplicate fee and both unapproved commissions. Respondent persisted in ignoring the court's requests. Moreover, she continued to ignore numerous additional letters and telephone calls from Ms. Spratley, who called on the court's behalf.

Respondent chose not to appear before the court at the summary hearing held on March 19, 1992. The court ordered the Auditor-Master to state a final account, recognizing that respondent had still failed to return the duplicate fee, either of the unapproved commissions, or the improperly retained estate funds. Respondent also chose not to attend a meeting of counsel convened by the Auditor-Master on July 15, 1992, sending instead a copy of her November 1991 letter promising to repay the duplicate fee and the unapproved commission on the fifth account.

Thirty-one months after making the double payment, twenty-one months after being formally notified, and eight months after agreeing to return it, respondent finally documented her repayment of the duplicate fee on July 27, 1992. However, she failed to comply fully with the Auditor–Master's requests and still refused to repay the unapproved commissions on the fifth and sixth accounts. Providing her with one last chance, the Auditor–Master notified respondent that she was exposed to significant liability due to her continued retention of estate funds more than a year after resigning as conservator of the estate. Respondent, however, did not reply.

The Auditor–Master issued a final report finding that respondent had ultimately repaid the duplicate fee, but still retained the unapproved commissions on the fifth and sixth accounts, retained $7000 of estate funds, and unreasonably incurred additional fees due to mismanagement. The court entered judgment against respondent and approved the commissions on the fifth and sixth accounts. It did not ratify the commissions, however, and therefore assessed interim interest.

## II. Legal Analysis

Before us now is the Report and Recommendation of the Board on Professional Responsibility. Our task is to decide whether to adopt the Board majority's recommendation that respondent be disbarred. In making our determination, we must defer to the Board's findings on the underlying circumstances as they are supported by the record and undisputed by respondent. D.C. Bar R. XI, § 9(g); *In re Pierson,* 690 A.2d 941, 946 (D.C.1997). However, whether those underlying circumstances constitute misappropriation and whether any misappropriation resulted from more than simple negligence are questions of law concerning "ultimate facts." *Id.* at 947 (citing *In re Micheel,* 610 A.2d 231, 234 (D.C.1992)). Accordingly, we may entertain those legal questions de novo. *Id.* As for the sanction of disbarment, we must "adopt the recommended disposition of the

Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C. Bar R. XI, § 9(g)(1). Operating within that framework, we adopt the recommendation of the Board majority.

■ We examine first whether the circumstances described above constitute misappropriation. The definition of misappropriation is well settled: "any unauthorized use of client's funds entrusted to [a lawyer], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not [she] derives any personal gain or benefit therefrom." *Pierson, supra,* 690 A.2d at 947 (citing cases). The Board found two independent bases for its conclusion that respondent engaged in misappropriation here.[2] We see no reason to depart from that analysis.

■ We deem respondent's belated repayment of the duplicate fee she mistakenly paid herself in 1989 as important. It is observed that the duplicate payment initially arose out of inadvertence. However, despite learning of the error from the auditor, respondent nevertheless held onto the duplicate payment for an additional twenty-one months. This misuse of the client's funds was clearly unauthorized. We therefore agree with the Board that an honest mistake ripened into misappropriation because of the unreasonably long delay in repaying a duplicate fee she knew was unauthorized.

■ We also agree with the Board that repeatedly taking fees and commissions prior to receiving court approval provides a second ground for misappropriation. Our regulations plainly require the Probate Division of the Superior Court to approve a conservator's fees and commissions. D.C.Code § 21–2060 (1997); Super. Ct. Prob. R. 308. Although the issue of timing is arguably ambiguous, we are persuaded that conservators are not authorized to take repeated fees and commissions before obtaining the required approval from the court.[3] *See In re Ray,* 675

---

**2.** The Board considered and rejected a third possible basis arising from respondent's failure to turn over all estate funds to the successor conservator. We agree that this is insufficient to constitute misappropriation because there was no unauthorized use of those funds.

**3.** This reading of our regulations accords with the common practice and routine of the probate

**450**

A.2d 1381 (D.C.1996).[4] Before obtaining any judicial approval, however, respondent paid herself a fee in 1989 and also took commissions on the fifth account and sixth and final account. Moreover, the record does not support the contention that the court's eventual approval of the premature payments operated as a "ratification." These unapproved payments suffice to establish that respondent used her client's funds without authorization.

### III. Sanction

We next turn to the question whether respondent's misappropriation resulted from more than simple negligence. This is a critical issue because the en banc court has held that we must impose the sanction of disbarment for misappropriation "unless it appears that the misconduct resulted from nothing more than simple negligence." *In re Addams,* 579 A.2d 190, 191 (D.C.1990) (en banc). To resolve this question, we must determine whether respondent's case presents sufficiently extraordinary circumstances to warrant a lesser sanction. *Id.* We are unable to conclude that the misconduct here resulted merely from simple negligence or that it merits a sanction less than disbarment.

Two features of respondent's acts lead us to this conclusion. First, respondent's prolonged refusal to repay the duplicate fee is tantamount to recklessness. Respondent was well aware of her error because the auditor notified her and the court repeatedly requested repayment. In the face of the court's numerous requests, we are unpersuaded that mere inadvertence could account for her failure to repay the duplicate fee until twenty-one months had elapsed. Moreover, it simply does not follow from her lack of any venal motive that respondent's conduct amounted to nothing more than negligence. Respondent's flagrant disregard of the court's inquiries for nearly two years is an aggravating factor of sufficient magnitude to compel us to conclude that she was reckless.

Second, each of respondent's three pre-approval payments to herself was a deliber-ate act. Respondent deliberately took a fee in August 1989 knowing that it had not yet been approved by the court. Respondent also deliberately took a commission on the fifth account prior to the court's approval of the account or the commission. In addition, despite requests from the court to return the unapproved fee and commission, respondent deliberately took another unapproved commission on the sixth and final account. Especially in light of this third act of payment despite court requests to return the earlier two unapproved payments, we cannot characterize these deliberate acts as the product of simple negligence.

We hold that respondent misappropriated estate funds from her client and that this misconduct resulted from more than simple negligence. On the authority of *Addams, supra,* we are therefore required to disbar her from the practice of law.

*So ordered.*

---

4. We acknowledge that *Ray* was decided after the events of this case transpired but reject the claim that the bar had no notice that taking unapproved payments was inappropriate.

court and is further supported by the expert testimony presented to the Hearing Committee.