**In re W. Eric CLOUD, Respondent**

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 303008).**

No. 01–BG–1001.

District of Columbia Court of Appeals.

Argued March 7, 2003.
Decided Dec. 28, 2007.
As Amended on Grant of Rehearing March 13, 2008.

John O. Iweanoge, Washington, DC, for respondent. W. Eric Cloud, filed a brief pro se.

Ross T. Dicker, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel at the time the brief was filed, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Before GLICKMAN, Associate Judge, and WAGNER and TERRY, Senior Judges.*

---

\* Judge Wagner was Chief Judge of the court at the time of argument. Her status changed to Senior Judge on December 21, 2005.

Judge Terry was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on February 1, 2006.

1. Rule 1.15 deals with the safekeeping of property obtained from third persons, and

TERRY, Senior Judge:

Respondent, Eric Cloud, is a member of the District of Columbia Bar. In 1997 a complaint was filed with the Office of Bar Counsel alleging that Mr. Cloud had failed to pay funds which he held in trust from a personal injury settlement. After an investigation by Bar Counsel, a hearing committee found that Mr. Cloud had violated Rules 1.15 and 1.17 of the District of Columbia Rules of Professional Conduct.[1] In light of its findings, the hearing committee recommended that Mr. Cloud be suspended from the practice of law for one year, with six months stayed. Bar Counsel filed exceptions to the hearing committee's report. The Board on Professional Responsibility ("the Board"), after hearing oral argument and considering briefs filed by the parties, found that Mr. Cloud had not engaged in dishonesty, nor had he violated any ethical rules requiring the maintenance of financial records, but that he had engaged in reckless misappropriation of certain entrusted funds. Consequently, the Board recommended that he be disbarred. Both Bar Counsel and Mr. Cloud filed exceptions to the Board's report and recommendation. We accept that recommendation and order Mr. Cloud's disbarment.

## I. FACTUAL BACKGROUND

### A. The Settlement

In March 1993 Mr. Cloud was retained by Kimberly Dean to represent her in a

Rule 1.17 concerns trust account overdraft notification.

In another matter heard at the same time, concerning alleged misconduct related to the inadvertent filing of certain witness fee forms, the hearing committee found that Mr. Cloud had not committed a disciplinary violation. That finding has not been challenged.

civil action against General Elevator Company arising out of injuries she sustained while riding in an elevator in an office building in downtown Washington. Before Ms. Dean retained Mr. Cloud, she filed a workers' compensation claim against her employer because her injuries were job-related. Kemper Insurance Company, her employer's workers' compensation carrier, paid Ms. Dean $23,802.89 on her claim, thereby acquiring a statutory lien on any award recovered in her civil action against General Elevator.[2] When Ms. Dean accepted a $24,000 settlement offer from General Elevator in April 1993, Kemper and Mr. Cloud agreed that Kemper would receive $10,254.93 in exchange for a waiver of its rights to go after any other funds.[3]

On May 3, 1993, General Elevator issued two checks to Mr. Cloud totaling $24,000, which he deposited in his attorney escrow account. Then, in August 1993, a formal settlement agreement was signed by Ms. Dean, Mr. Cloud, and a representative of Kemper which memorialized the parties' earlier understanding that Kemper was entitled to a portion of the settlement from General Elevator. The settlement agreement was forwarded to the District of Columbia Office of Workers' Compensation for its review and approval. As part of the approval process, Mr. Cloud received a letter from Kemper's attorney, Marvin Andersen, dated October 4, 1993, along with a form entitled "Approval of Compromise of Third–Person Cause of Action." With respect to that form, Mr. Andersen's letter stated:

> Please calculate what the net amount was to your client. I understand that to mean the third-party settlement minus the litigation expenses, minus attorney's fees and minus the amount paid to Kemper for release of the lien. *I would like to make a footnote to that final figure to the effect that Kemper is waiving its credit for temporary total disability overpayment of $5,311.90.* This makes the final agreement more favorable to your client. [Emphasis added.]

The italicized sentence referred to a provision in the settlement agreement between Ms. Dean and Kemper, pursuant to which Kemper had compromised its claim for the return of excess disability benefits that had been paid to Ms. Dean. However, when Mr. Cloud filled out and returned the settlement form, he misunderstood the sentence to mean that Kemper had decided to reduce its negotiated lien of $10,254.93 by an additional $5,311.90 (*i.e.*, to $4,943.03). On the basis of this misunderstanding, Mr. Cloud distributed an additional $3,311 to Ms. Dean and took an additional $2,000 as his fee.[4]

---

**2.** Kemper's lien apparently arose under D.C.Code § 32–1535 (2001), which allows an insurance carrier to recover disbursed compensation when a third party is liable. *See Washington Metropolitan Area Transit Authority v. Reid,* 666 A.2d 41, 42–44 (D.C.1995).

**3.** Ms. Dean was offered the $24,000 settlement as a result of negotiations by her previous attorney, Kathleen Dolan. She retained Mr. Cloud because she thought she was entitled to more. The negotiation for Kemper to receive the $10,254.93 was also done through Ms. Dolan. Mr. Cloud agreed to take Ms. Dean's case with the understanding that Ms. Dean would accept the $24,000 settlement proposal from General Elevator.

**4.** Also on October 4, 1993, Mr. Cloud purchased a cashier's check in the amount of $5,000, payable to Kemper. He never sent the check, however, because Mr. Andersen advised him to hold on to it until the settlement was approved. What eventually happened to this check has never been determined. There is no evidence that it was redeposited in any of Mr. Cloud's accounts. Cloud testified that he used it later to pay Kemper, but the evidence shows that the eventual payment was effected by a transfer from his personal account at Merrill Lynch.

Two months later, after the Office of Workers' Compensation formally approved the settlement, Mr. Andersen wrote a letter to Mr. Cloud seeking the full $10,254.93. Only then, in December 1993, did Mr. Cloud learn that he had misread the letter of October 4 and had made a mistake in disbursing the $5,311 to Ms. Dean and himself. Mr. Cloud acknowledged his mistake to Mr. Andersen and, on February 4, 1994, sent a check for $5,943.03 to Kemper in partial payment of its lien. The check covered the $4,943.03 that Mr. Cloud mistakenly thought he owed, plus $1,000 of the approximately $2,000 in fees that Mr. Cloud had withdrawn in error.

In order to pay the balance due to Kemper, Mr. Cloud sought to recover from Ms. Dean the $3,311 he had overpaid her, but she refused to return any of that money. Mr. Cloud then promised Kemper that he would pay her portion of the amount due in addition to the remaining $1,000 in fees that he had taken by mistake. In May of 1994, Mr. Cloud sent Kemper an additional check for $500, which brought the balance due down to $3,811.90, but for many months thereafter he made no further payments.

When asked during the hearing to explain why he did not pay Kemper the full amount due, Mr. Cloud testified that he did not have any money. In April 1994, however, he had made two deposits in his operating account of $29,543 and $143,675. When pressed to explain why he did not use those funds to pay Kemper, Mr. Cloud did not have an explanation. However, he had testified earlier that initially he thought that Kemper had caused the error, and that Kemper therefore would

have to wait while he tried to get Ms. Dean to return the money before he paid it himself.

As a result of Mr. Cloud's failure to pay, Mr. Andersen filed suit on behalf of Kemper seeking the balance owed, plus interest. On December 1, 1995, Mr. Cloud entered into a consent order with Kemper in which he agreed to pay $3,811.90 by June 1, 1996. If he failed to do so, the consent order provided that Kemper could obtain a judgment against him for that amount, plus interest, costs, and attorney's fees. When Mr. Cloud failed to pay the agreed-upon sum, Mr. Andersen obtained a consent judgment for $4,370.78. Mr. Cloud testified before the hearing committee that during the time he was supposed to be paying Kemper in accordance with the consent order, he could not work for several weeks because of medical problems and was also experiencing extreme financial strain in his law practice.

In March 1997, as a result of Mr. Cloud's continued failure to make full payment, Mr. Andersen brought his conduct to the attention of Bar Counsel. Just before the start of his disciplinary hearing, Mr. Cloud finally paid Kemper the remaining balance he owed.[5]

### B. *The Bank Accounts*

In March 1993 Mr. Cloud opened an account at Maryland National Bank entitled "W. Eric Cloud Attorney Escrow Account" ("the Escrow Account"). In May 1993 Mr. Cloud received the two settlement checks relating to Ms. Dean's General Elevator case. After he deposited these two checks, totaling $24,000, Mr. Cloud's Escrow Account had a balance of $29,467.79. On May 11, 1993, Mr. Cloud

5. This payment, however, did not absolve him of wrongdoing. *See, e.g., In re Choroszej,* 624 A.2d 434, 436–437 (D.C.1992) (attorney paid disputed amount after being contacted by Bar Counsel about alleged misappropriation, but was nevertheless suspended from practice for six months).

transferred $11,000 from the Escrow Account to another account ("the Operating Account") which he maintained at Nations Bank. He later used these transferred funds to pay Ms. Dean and her former attorney, Ms. Dolan, for Dolan's services in the General Elevator case. On May 28 Mr. Cloud withdrew another $9,967 from the Escrow Account and deposited it in the Operating Account. On that same date, Mr. Cloud opened yet another account at Nations Bank ("the Cloud & Henderson Account") with an $8,500 check drawn on his Operating Account. He testified that he opened the Cloud & Henderson Account in order to help one of his clients, a church, secure a loan from Nations Bank.[6]

On August 11, 1993, when Mr. Cloud and Kemper agreed that a portion of the $24,000 settlement was to be earmarked for Kemper, the balance in Mr. Cloud's Escrow Account was $346.02, and the balance in the Cloud & Henderson Account was $10,006.93; the balance in the operating account was $177.99.[7] On October 20, 1993, Mr. Cloud in effect closed the Escrow Account by allowing the balance to fall to zero.

On December 13, 1993, the date on which the settlement agreement was approved by the Office of Workers' Compensation, the balance in the Cloud & Henderson Account was $50.98, and the balance in the Operating Account was $188.88. On December 23, when Mr. Andersen contacted Mr. Cloud to inform him that the $10,254.93 was due, Mr. Cloud had a combined total of only $4,043.57 in all of his accounts. Thus, even assuming that Mr. Cloud's reading of the October 4, 1993, letter was correct, i.e., that Kemper was reducing the amount it was owed by just over $5,300, the money he held in escrow in December 1993 was insufficient to pay the reduced amount.

## C. The Lost Records

Mr. Cloud was a sole practitioner for most of his career; his wife, Carol Cloud, served as his secretary. Her responsibilities included the handling of the office's books and records. However, when Mrs. Cloud testified before the hearing committee; she could not recall having prepared any settlement documents in the Dean case. Mrs. Cloud also testified that although she knew of the existence of the Escrow Account, her husband kept track of the money in that account in a separate ledger book.

Sometime in 1996 or 1997 (the date is not clear from the record), Mr. Cloud moved his office. In the course of the move, some boxes were inadvertently left behind and were never recovered. Mr. Cloud surmised that the boxes and their contents had been thrown away by either the landlord or the cleaning staff. Included among the lost materials was the ledger

---

6. Although Mr. Cloud testified that the Cloud & Henderson Account was maintained as an additional escrow account, the bank's monthly statements did not refer to it as such. Nevertheless, when the account was opened, the $8,500 check was made payable to "Cloud & Henderson—Escrow Account."

7. These figures come from the spread sheet attached to the hearing committee's report. The hearing committee's findings contained different figures, but they apparently resulted from the fact that the committee transposed some of the numbers. Since the corrected amount shows that the difference between the required balance and the actual balance was less than $100, and since Mr. Cloud's mistake of fact regarding his payment to Ms. Dean and himself was credited by the hearing committee, any misappropriation at this point would appear, at most, to have been negligent. See, e.g., In re Anderson, 778 A.2d 330, 339 (D.C.2001). However, given our disposition of the case, we need not decide whether any misappropriation on this particular date was reckless or negligent.

book. Because Mr. Cloud never catalogued the office's contents before moving, there was no way of determining which files were lost or destroyed. After the move, Mr. Cloud made no attempt to reconstruct the files associated with the Dean case because he considered it closed and because he already knew (or thought he knew) how much he owed Kemper.

### D. *The Proceedings Below*

After three hearings, the hearing committee issued a report in which it found that Mr. Cloud had violated Rule 1.15 of the Rules of Professional Conduct because he had commingled funds, misappropriated property from October 1993 to March 1994, and failed to pay Kemper on time. The committee also found that he did not maintain escrow funds in proper accounts as required by Rule 1.17(a). In addition, however, the hearing committee found that Mr. Cloud had not engaged in dishonest or fraudulent conduct by failing to keep records of the Escrow Account, and thus it recommended only that he be suspended from the practice of law for one year, with the final six months stayed pending certain actions by Mr. Cloud.

Bar Counsel took exception to the hearing committee's findings, challenging in particular the committee's failure to find Mr. Cloud's conduct dishonest and reckless. Bar Counsel also excepted to the recommended sanction of suspension and urged disbarment instead. Mr. Cloud maintained that the Board should accept the hearing committee's findings and recommendation.

The Board found that Mr. Cloud had engaged in misappropriation that was "at least reckless" because of his failure to pay the money to Kemper within a reasonable time. However, the Board did not find, as Bar Counsel urged it to do, that Mr. Cloud engaged in misappropriation beginning in June of 1993 by simply allowing the funds in the Escrow Account to drop below the total owed to Kemper. Nevertheless, in light of the finding of reckless conduct, the Board's recommended sanction was disbarment.

In this court Bar Counsel has filed exceptions to the Board's finding on misappropriation, arguing *inter alia* that the misappropriation began in June of 1993 and not in October of 1993. Mr. Cloud challenges both the Board's finding and its recommended sanction.[8]

### II. MISAPPROPRIATION

■■■ This court has defined misappropriation as "any unauthorized use of client's funds entrusted to [an attorney], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Harrison*, 461 A.2d 1034, 1036 (D.C. 1983) (quoting *In re Wilson*, 81 N.J. 451, 455 n. 1, 409 A.2d 1153, 1155 n. 1 (1979)). In general, "misappropriation occurs when the balance in [the attorney's bank] account [or accounts] falls below the amount due to the client." *In re Micheel*, 610 A.2d 231, 233 (D.C.1992) (citation omitted); *see In re Anderson*, 778 A.2d 330, 335 (D.C. 2001); *In re Reed*, 679 A.2d 506, 508 (D.C. 1996); *In re Pels*, 653 A.2d 388, 394 (D.C. 1995). Bar Counsel must prove misappropriation by clear and convincing evidence. *E.g., In re Gilchrist*, 488 A.2d 1354, 1357

---

**8.** While this matter was pending, Mr. Cloud filed in this court a motion to remand the case to the Board, asserting that the Board's findings of fact were made without considering what he regarded as a crucial letter from Mr. Andersen. Both Bar Counsel and the Board opposed the motion. This court denied the motion, but allowed the letter to be filed as a supplemental record.

(D.C.1985). Nevertheless, misappropriation is essentially a *per se* offense, and "proof of improper intent is not required." *In re Anderson*, 778 A.2d at 335. When the evidence shows intentional or reckless misappropriation, disbarment is "the appropriate sanction in nearly all cases," unless there are extraordinary circumstances that justify a lesser sanction.[9] *In re Dixon*, 763 A.2d 730, 732 (D.C.2000); *see In re Addams*, 579 A.2d 190, 191 (D.C.1990) (en banc).

The Board concluded that Mr. Cloud should be disbarred because his failure to repay the Kemper funds in a timely manner constituted reckless misappropriation. The Board likened this case to *In re Utley*, 698 A.2d 446 (D.C.1997), in which a lawyer's mistaken payment of duplicate fees to herself, followed by her refusal to return the money for twenty-one months, was held to constitute reckless misappropriation. Bar Counsel agrees that Mr. Cloud should be disbarred on this ground, but argues that the reckless conduct began when he failed to keep funds in his Escrow Account equal to the amount he owed Kemper and also failed to keep required financial records.

█ In assessing whether any of Mr. Cloud's conduct rose to the level of recklessness, and therefore requires disbarment, we must ascertain whether he "engaged in a pattern or course of conduct demonstrating an unacceptable disregard for the welfare of entrusted funds." *In re Anderson*, 778 A.2d at 339; *accord, In re Gregory*, 790 A.2d 573, 579 (D.C.2002). In making the distinction between negligent and reckless misappropriation, our inquiry focuses on whether the lawyer handled the entrusted funds "in a way that suggests the unauthorized use was inadvertent or the result of simple negligence, or in a way that reveals either an intent to treat the funds as the attorney's own or a conscious indifference to the consequences of his behavior." *In re Anderson*, 778 A.2d at 339; *see also In re Berryman*, 764 A.2d 760, 768–770 (D.C.2000).

Bar Counsel and the Board point to three possible grounds for a finding of misconduct warranting a disciplinary sanction. First, assuming that Mr. Cloud's understanding of the October 4, 1993, letter was correct, Bar Counsel argues that his failure to maintain sufficient funds in his several bank accounts to pay Kemper should be regarded as misappropriation. Second, Bar Counsel urges that Mr. Cloud's failure to account for the lost $5,000 cashier's check (see note 4, *supra*) would support a finding of misappropriation. Third, both Bar Counsel and the Board maintain that once Mr. Cloud acknowledged his mistake about the amount that he still owed to Kemper, he did not act expeditiously enough to repay the amount that was still due, and that this delay amounted to reckless misappropriation. We agree that there was misappropriation, but only on the third ground.

### A. *The Bank Accounts and the Missing Check*

█ While Mr. Cloud's conduct relating to his three bank accounts cannot be condoned, we think the Board was correct in finding that it did not rise to the level of recklessness. As both the hearing committee and the Board found, Mr. Cloud maintained at least $10,254.93 in one or more accounts until he honestly, but mistakenly, interpreted Mr. Andersen's letter

9. Such extraordinary circumstances were present in *In re Kersey*, 520 A.2d 321, 327 (D.C.1987), in which this court determined that alcohol dependency would permit a lesser penalty. *But see In re Cooper*, 591 A.2d 1292, 1296–1297 (D.C.1991) (attorney's addiction to cocaine was not shown to be the cause of his misconduct).

to mean that Kemper was reducing its lien amount by $5,311.90. This court has held, contrary to Bar Counsel's assertion, that when an attorney places entrusted funds in an operating account instead of an escrow account, but maintains a balance in the operating account that is sufficient to cover the entrusted funds, the attorney is guilty of commingling and, assuming there are no aggravating factors, only simple negligence. *See In re Micheel,* 610 A.2d at 233–234.

■ Furthermore, after Mr. Cloud concluded (mistakenly) that he owed Kemper only a fraction of the original amount, he purchased a cashier's check for $5,000 to deliver to Mr. Andersen. That check, unfortunately, was lost, but Mr. Cloud's testimony about its disappearance was found credible by the hearing committee. Given that finding,[10] Bar Counsel was unable to prove that the funds had been used without authorization, and thus that they had been misappropriated. With the actual fate of the cashier's check unknown even to this day, an inference of reckless conduct cannot be based simply on its disappearance. Mr. Cloud's conduct, even if deemed to be unauthorized use of the money, did not display the conscious indifference necessary for a finding of recklessness. *See In re Anderson,* 778 A.2d at 339. Thus a finding of reckless misappropriation on this ground is not justified. *See In re Ingram,* 584 A.2d 602, 603 (D.C. 1991); *In re Gilchrist,* 488 A.2d at 1355–1356.

### B. *The Failure to Repay*

■ The Board and Bar Counsel both contend that Mr. Cloud's failure to pay Kemper back within a reasonable time after discovering his error supports the finding of reckless misappropriation. On this point we agree. Mr. Cloud failed to pay Kemper the full amount owed after his misunderstanding about the letter of October 4, 1993, was corrected. While we hesitate to find genuine misappropriation in connection with Mr. Cloud's initial distribution in reliance on the letter, or in connection with his subsequent failure to pay Kemper the funds that his client refused to return, we are constrained to find misappropriation with respect to Mr. Cloud's prolonged delay in paying Kemper the excess fees he paid to himself. However reasonable it may have been for him to take those fees initially, the fact remains that he unjustifiably refused to disgorge the fees with anything like reasonable promptness after he learned that he was not entitled to keep them. It is this conduct that supports the Board's finding of recklessness and its recommendation of disbarment. *See In re Anderson,* 778 A.2d at 339 (disbarment appropriate when attorney showed a disregard of entrusted funds).

Mr. Cloud became aware of the true amount due and owing to Kemper in December 1993, yet failed to pay Kemper in full until more than four years later, and only after formal disciplinary proceedings had been brought against him. *See In re Utley,* 698 A.2d at 449 (a finding of recklessness can be based on a lawyer's prolonged delay in making restitution). Furthermore, it took several attempts, including the filing of a lawsuit by Kemper's attorney, to prompt Mr. Cloud's payment of the remainder of funds he held in trust, even though he had access to funds as early as April 1994 that would easily have covered the full amount due. While Mr. Cloud did suffer from intermittent medical and financial

---

10. Credibility findings concerning witness testimony before the hearing committee are entitled to deference. *See generally In re Berryman,* 764 A.2d at 766.

troubles, these difficulties were not the cause of his failure to pay Kemper. Rather, his explanation before the hearing committee was: "I paid my portion of [the money]. I didn't get anything out of it. I have done nothing wrong. Kemper caused it.... [M]y position was when it happened I was right.... I didn't steal anyone's money."

Mr. Cloud's testimony makes clear that his failure to rectify the situation was knowing and deliberate—"at least reckless," in the language of the Board—and not the product of inadvertence or mistake. Even assuming that the October 4, 1993, letter was ambiguous, Mr. Cloud was given several opportunities to pay Kemper the funds to which it was entitled and had sufficient time to do so. Thus we hold that the Board's finding of reckless misappropriation in this instance, along with the recommendation of disbarment based on it, was supported by the record. *See In re Anderson,* 778 A.2d at 339; *In re Berryman,* 764 A.2d at 768–770.[11]

### III. DUE PROCESS

Mr. Cloud maintains that his due process rights were violated when the hearing committee and the Board failed to consider an exhibit indicating that he was paying Kemper the funds it was owed. He contends that because neither body considered the exhibit, their subsequent findings of fact were in error and that his due process rights were therefore violated. While it is undisputed that attorneys involved in disciplinary cases are entitled to due process protections, *see, e.g., In re Thorup,* 432 A.2d 1221, 1225 (D.C.1981),

we are satisfied that no violation of Mr. Cloud's rights occurred in this case.

The principal flaw in Mr. Cloud's claim is his failure to raise it until now. He had ample opportunity to assert any due process violations before the hearing committee when he filed his proposed findings of fact and conclusions of law in June 1999, but he did not do so. This court has held in other disciplinary proceedings that when an attorney charged with a violation "had a fair opportunity to raise ... [an issue] before the Hearing Committee and the Board, and failed to take advantage of it, he has waived his right to have that issue resolved in this court." *In re James,* 452 A.2d 163, 169 (D.C.1982); *see also, e.g., In re Bernstein,* 707 A.2d 371, 375 n. 5 (D.C.1998) ("an attorney facing disciplinary action should raise before the Board any objections he or she may have to a Hearing Committee report, and fails to do so at the attorney's peril").

Moreover, Mr. Cloud fails to cite a single case for the proposition that the failure to consider a document of this type constitutes a due process violation. Due process questions in disciplinary cases generally involve whether the attorney was given adequate notice of the alleged misconduct and a meaningful opportunity to be heard, not whether a particular exhibit was considered by the hearing committee or the Board. *See, e.g., In re Maxwell,* 798 A.2d 525, 530 (D.C.2002); *In re Day,* 717 A.2d 883, 886 (D.C.1998). But even if the document should have been considered, it shows only that Mr. Cloud paid Kemper a portion of the amount due and

---

**11.** In light of our holding on the misappropriation issue, we need not decide whether Mr. Cloud's failure to maintain financial records relating to his Escrow Account constitutes a separate disciplinary violation.

does little or nothing to aid Mr. Cloud's defense, since it also shows clearly that Mr. Cloud still owed $3,632.42. On this record we find no violation of Mr. Cloud's due process rights.

## IV. SUBSTANTIAL EVIDENCE

■ In disciplinary cases, this court must accept the Board's findings "unless they are unsupported by substantial evidence...." D.C. Bar Rule XI, § 9(g); *see also, e.g., In re Davenport,* 794 A.2d 602, 603 (D.C.2002). Mr. Cloud asserts that as a result of the committee's and the Board's failure to consider his exhibit showing payment to Kemper, their findings were based on a "lack of a record" and therefore were not supported by substantial evidence. This argument is meritless.

According to the evidence, Mr. Cloud became aware of the true amount due to Kemper in December 1993, yet he consciously and knowingly failed to pay that sum in full until more than four years later. Payment was finally forthcoming only after the filing of a lawsuit and the initiation of a disciplinary proceeding, even though he had access long before then to money he could have used to pay Kemper. Mr. Cloud's own testimony showed that the primary reason for his delay in paying Kemper was his belief that Kemper was at fault, not any inability on his part to make the payment. Even without the document Mr. Cloud argues should have been considered by the Board, the evidence was more than sufficient to support its findings and, in light of such cases as *Anderson* and *Utley,* its recommendation.

## V. INCONSISTENT DISPOSITION

■ Mr. Cloud argues that disbarment for what he did in this case would be inconsistent with sanctions imposed in sim-

ilar cases. This court, however, has long recognized a presumption that "in virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence." *In re Addams,* 579 A.2d at 191. Lesser sanctions are appropriate "only in extraordinary circumstances," *id.,* which we have very narrowly defined. *See, e.g., In re Kersey,* 520 A.2d at 326. While Mr. Cloud testified that he suffered from medical and financial problems during the time he was supposed to be repaying Kemper and offered substantial testimony from character witnesses, there is no case law in this jurisdiction that would justify a more lenient sanction for these reasons; indeed, our case law says just the opposite. *See, e.g., In re Pierson,* 690 A.2d 941, 948–951 (D.C.1997) (evidence of financial pressures, commendable *pro bono* activities, and acceptance of responsibility did not warrant a reduction in sanction for intentional misappropriation).

Mr. Cloud cites *In re Choroszej, supra* note 5, for the proposition that a failure to repay entrusted funds should not result in automatic disbarment. *See Choroszej,* 624 A.2d at 436–437. In *Choroszej,* however, we refrained from disbarring the attorney because his failure to pay a physician from funds he held in trust was deemed negligent and not reckless or dishonest. *Id.* at 435–436. Further, when contacted about the disputed funds by his client, the attorney tried to solve the problem by initiating contact with the physician's office to clear up the misunderstanding because he honestly, but mistakenly, believed the physician had already been paid. *Id.* at 436. In this case, unlike *Choroszej,* Mr. Cloud did not attempt to clear the matter up with Kemper, but tried to put the blame on Kemper when he sought to justify his fail-

ure to repay. Moreover, the attorney in *Choroszej* was never sued to compel payment of any funds that were due and owing.

This court has historically held that disbarment is warranted in cases of reckless misappropriation because such conduct undermines "the public's faith that attorneys will fulfill their duties as fiduciaries in handling funds entrusted to them...." *In re Pierson,* 690 A.2d at 948; *see also In re Addams,* 579 A.2d at 198–199. Mr. Cloud has offered no acceptable reason why the sanction in this case should be any different.

## VI. Conclusion

It is therefore ORDERED that respondent, W. Eric Cloud, is hereby disbarred from the practice of law in the District of Columbia, effective thirty days from the date of this opinion. We direct Mr. Cloud's attention to the requirements of Rule XI, §§ 14(g) and 16(c), and their effect on his eligibility for reinstatement.