*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-BG-1207

IN RE OLEKANMA A. EKEKWE-KAUFFMAN, RESPONDENT.

A Suspended Member of the Bar of the District of Columbia Court of Appeals
(Bar Registration No. 479967)

On Report and Recommendation of the
Board on Professional Responsibility
(16-BD-039)

(Argued February 25, 2021                         Decided January 27, 2022)

*Olekanma A. Ekekwe-Kauffman*, pro se.

*Julia L. Porter*, Deputy Disciplinary Counsel, with whom *Hamilton P. Fox, III*, Disciplinary Counsel, and *Myles V. Lynk*, Senior Assistant Disciplinary Counsel, were on the brief, for the Office of Disciplinary Counsel.

Before EASTERLY and DEAHL, *Associate Judges*, and WASHINGTON, *Senior Judge*.

DEAHL, *Associate Judge*: The Board on Professional Responsibility unanimously recommends we disbar Olekanma Ekekwe-Kauffman from the practice of law in the District of Columbia. It makes that recommendation principally upon a finding that Ekekwe-Kauffman engaged in reckless

misappropriation of entrusted client funds with respect to four clients, though it also found a host of other violations of the District of Columbia Rules of Professional Conduct. Ekekwe-Kauffman raises several exceptions to the Board's Report and Recommendation, but only one is of any consequence: she contends there was not substantial evidence to support the Board's finding that she engaged in reckless misappropriation. Rather, she maintains that the evidence shows any misappropriations were the result of mere negligent recordkeeping, rather than recklessness.

We conclude there is substantial evidence to support the Board's finding that Ekekwe-Kaufmann recklessly misappropriated client funds and we therefore adopt that finding. Disbarment is the presumptive sanction for reckless misappropriation. *In re Addams*, 579 A.2d 190, 191 (D.C. 1990) (en banc). This case involves no "extraordinary circumstances" meriting departure from the presumptive sanction, *id.*, and none of Ekekwe-Kauffman's other challenges alter the conclusion that disbarment is warranted here. We therefore adopt the Board's recommended sanction and disbar Ekekwe-Kauffman from the practice of law in the District of Columbia.

**I.**

This is not Ekekwe-Kauffman's first time through the disciplinary process. In 2008, Disciplinary Counsel opened an investigation into Ekekwe-Kauffman in response to a former client's complaint. *See In re Ekekwe-Kauffman*, 210 A.3d 775, 782-83 (D.C. 2019). In that case, like this one, the Board ultimately recommended we disbar Ekekwe-Kauffman based on her reckless misappropriation of client funds. We rejected that recommendation because we concluded the evidence did not support the conclusion that Ekekwe-Kauffman had in fact misappropriated client funds; although the evidence showed that she commingled client funds with her own, the evidence was lacking as to the "more egregious" conduct of misappropriation. *Id.* at 792-93 ("When an attorney deposits client funds into the attorney's operating account, she engages in commingling. She does not engage in misappropriation, however, until 'the balance in that account falls below the amount due to the client.'") (citation omitted). While Ekekwe-Kauffman had deposited client funds into her operating account and thereby commingled funds, it did not appear that the operating account had ever "dropped below the amount she should have been holding" on behalf of her client. *Id.* at 793-94. We nonetheless suspended her from the practice of law in the District for three years for a host of other violations. *Id.* at 797-800.

This appeal arises from the complaint of another former client, Florence Myers. In response to that complaint, Disciplinary Counsel opened another investigation in 2013. The investigation eventually revealed that between May 2014 and June 2015, Ekekwe-Kauffman's trust accounts in which she held client funds were overdrawn eight times. Disciplinary Counsel later filed a Specification of Charges. Some of the charges related to Ekeke-Kauffman's failure to provide legal advice to Myers after being paid to do so,[1] while others concerned Ekeke-Kauffman's handling of client-entrusted funds on behalf of four clients in 2014 and 2015: James Short, LaToya King, Dewaine Drew, and DePaul Eppright.[2] For purposes of this appeal, we narrow our focus to the second set of charges concerning misappropriation, because they underpin the Board's recommendation to disbar Ekekwe-Kauffman. The core evidence relevant to misappropriation as to each of the four clients was as follows.

---

[1] More specifically, Disciplinary Counsel alleged Ekekwe-Kauffman violated Rule 1.4(a) by failing to keep Myers reasonably informed; Rule 1.16(d) by failing to promptly return Myers's money upon notice of termination; and Rule 8.4(c) by engaging in conduct involving dishonesty and misrepresentation.

[2] With respect to the misuse of entrusted client funds, Disciplinary Counsel alleged Ekekwe-Kauffman violated Rule 1.15(a) by failing to keep and preserve complete records of trust-account funds as well as recklessly misappropriating funds; Rule 8.1(b) by failing to respond to a lawful demand for information by Disciplinary Counsel; and Rule 8.4(d) by seriously interfering with the administration of justice.

*James Short*

In March of 2015, Ekekwe-Kauffman received a settlement check on behalf of James Short for $8500, which she deposited into a Bank of America trust account. Of that amount, Ekekwe-Kauffman's closing statement indicated she was withholding the following amounts: $2250 for her attorney's fees, $500 for "Office Expense/Postage & Copies," and $2562.86 for amounts owed to third parties ($460.75 to the D.C. Fire and EMS Department; $1350 to "Pain & Rehab Center"; and $752.11 to Medicare). Ekekwe-Kauffman acknowledged she was not authorized to use the money earmarked for those third parties for any purpose aside from paying them the amounts indicated.

Ekekwe-Kauffman's bank records reflect that she both overpaid herself and kept much of the money earmarked for third parties. She paid herself $3000 in attorney's fees, which was $750 more than the (apparently already overinflated) closing statement indicated she was due.[3] More specifically, she wrote herself two

---

[3] The closing statement listed Ekekwe-Kauffman's attorney's fees as twenty-five percent of the settlement, which would be $2125, or $125 less than the $2250 miscalculated in the closing statement. In her testimony, Ekekwe-Kauffman attempted to explain the discrepancy by stating she charged a higher rate because the case went to trial. That is not much of an explanation, however, where the closing statement reflected the rate as 25% and simply inflated what that amounted

checks—with "James Short" and "Short's case" in the memo lines—totaling $3000 in March and April of 2015, and that was in addition to another check for $500 she had written herself in mid-March, presumably to cover the closing statement's line item for $500 in expenses. As for the $2562.86 earmarked for third parties, the evidence shows that Ekekwe-Kauffman kept more than $2000 of that for herself. She never paid the $460.75 due to D.C. Fire and EMS; she never paid the $1350 due to "Pain and Rehab Center"; and she paid Medicare just $450.12 of the $752.11 indicated on the closing statement, passing $100 of the difference on to Short and keeping the remaining $201.99 for herself.

All told, the records indicate Ekekwe-Kauffman misappropriated more than $2750 of Short's funds, more than doubling the amount she was owed in fees and expenses. Even if, as Ekekwe-Kauffman insists, Short and all of the third parties eventually "got paid," we note the Bank of America trust account in question was overdrawn by $750 on May 27, 2015, and its balance remained below the approximately $2750 owed in connection with Short's case for the entirety of June. Her account balance was thus below the amount she owed to Short and to third

_____

to. If she was charging a higher rate, that was not apparent from the face of the closing statement unless one did the math.

parties on his behalf for an extended period, with no evidence that Ekekwe-Kauffman had paid them the amounts due in that time.

*LaToya King*

Ekekwe-Kauffman deposited a $2000 settlement check on behalf of Latoya King into the Bank of America trust account in May of 2014, when the account was already overdrawn by $12.35. After disbursing her own fee and some attendant expenses to herself, and paying King her share of the settlement, Ekekwe-Kauffman owed $150 to a third-party medical provider on King's behalf, and sent the provider a check in that amount. However, the trust account did not have the necessary $150 to cover that expense—it had just $137.65 (i.e., the account was still $12.35 short). Ekekwe-Kauffman remedied the matter within the week by transferring $50 into the account. Ekekwe-Kauffman testified that she did not have authorization from King or from the provider to use, even briefly, any portion of the $150.

*Dewaine Drew*

Dewaine Drew received $8000 in settlement funds, which Ekekwe-Kauffman deposited into the Bank of America trust account on May 1, 2015. Drew's closing

statement indicated some withheld funds would be used to pay $480.25 to Anacostia River Emergency Physician PC. While Ekekwe-Kauffman wrote a check for that exact amount to Credence Resource Management, the collection company that apparently had taken over the debt, there is no indication this check was actually mailed or cashed between May and September 2015. During that time, the trust account's balance not only fell below the amount owed, it was overdrawn at least three times. Ekekwe-Kauffman testified that she did not have authority to use any portion of this money.

*DePaul Eppright*

DePaul Eppright received $12,500 in settlement funds which Ekekwe-Kauffman deposited into the Bank of America trust account on May 11, 2015. Eppright's closing statement reflected that $1100 of those settlement funds were to be paid to Doctors "Grover, Christie & Merritt." Between the time when Ekekwe-Kauffman deposited the settlement funds and eventually paid those medical providers, the trust account was overdrawn and fell below the amount owed numerous times. Ekekwe-Kauffman testified that neither the providers nor Eppright gave her permission to use any portion of their money.

\*      \*      \*

After conducting a hearing on the matter, the Hearing Committee found, among other violations, the four above instances of reckless misappropriation and consequently recommended Ekekwe-Kauffman be disbarred. The Board on Professional Responsibility unanimously agreed with that recommendation, though one Board member was recused and did not participate. Ekekwe-Kauffman now takes exception to that recommendation and to a variety of findings of fact and conclusions of law.

## II.

"[W]e must accept the Board's evidentiary findings if they are supported by substantial evidence in the record." *In re Howes*, 52 A.3d 1, 12 (D.C. 2012) (citing *Cleaver-Bascombe I*, 892 A.2d 396, 401-02 (D.C. 2006)). However, we review the Board's conclusions of law de novo. *In re Saint-Louis*, 147 A.3d 1135, 1147 (D.C. 2016) (citation omitted); *see also* D.C. Bar R. XI, § 9(h)(1). We will "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be

unwarranted." *In re Saint-Louis*, 147 A.3d at 1147 (citing *In re Rodriguez-Quesada*, 122 A.3d 913, 921 (D.C. 2015)).

Ekekwe-Kauffman raises a number of challenges to the Board's findings of fact and conclusions of law, but only one of them requires detailed consideration: she contends that substantial evidence does not support the Board's conclusions that she recklessly misappropriated entrusted funds. To the extent she misappropriated client funds at all, she maintains that the evidence shows her lapses were the result of mere "negligent record-keeping." We limit our consideration to these misappropriation offenses because both the Hearing Committee and the Board recommended disbarment based on the misappropriations alone. Disbarment is also the presumptive sanction for even one instance of reckless or intentional misappropriation, absent extraordinary circumstances that are not presented here. *In re Addams*, 579 A.2d at 191. Because disbarment is the harshest discipline we can impose, it is "unnecessary for us to determine" whether substantial evidence supports the other violations found by the Board, and it is likewise "unnecessary for us to determine the appropriate sanctions for" those other violations, assuming the evidence supports them. *In re Pleshaw*, 2 A.3d 169, 175 n.26 (D.C. 2010).

## A.

Ekekwe-Kauffman argues the evidence did not support a finding that she recklessly misappropriated entrusted funds in the King, Short, Drew, and Eppright matters. This argument raises two separate questions. First is whether substantial evidence supports the Board's finding that Ekekwe-Kauffman misappropriated funds. If she did, then the second question is whether her misappropriations were the result of mere negligence, or instead were reckless or intentional. *See In re Saint-Louis*, 147 A.3d at 1147. We consider those questions in turn.

## 1.

Misappropriation is "any unauthorized use of client[] funds entrusted to the lawyer." *In re Anderson*, 778 A.2d 330, 335 (D.C. 2001) (quoting *In re Harrison*, 461 A.2d 1034, 1036 (D.C. 1983)). It includes "not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not [she] derives any personal gain or benefit therefrom." *Id*. An attorney commits misappropriation when the balance of the attorney's account holding client funds drops below the amount the attorney owes to the client and/or owes to third parties on the client's behalf. *In re Edwards*, 990 A.2d 501, 518 (D.C. 2010). "There is no

'scienter' requirement in this court's approach to misappropriation," which "is essentially a per se offense" regardless of the mental state with which it is committed. *In re Saint Louis*, 147 A.3d at 1149 (quoting *In re Berryman*, 764 A.2d 760, 768 (D.C. 2000)).

Substantial evidence supports the Board's finding that there was misappropriation in all four instances. First, Ekekwe-Kauffman testified that none of the four clients authorized her to use their money, or to use money set aside to pay third parties on their behalf, for any purpose aside from paying the amounts due. Yet, in all four cases the record establishes that, at least temporarily, Ekekwe-Kauffman used entrusted funds by letting her trust account dip below the amounts owed to clients and to third parties on their behalf. Her misappropriations were not always of substantial sums, and were not always for protracted periods, but in each case the evidence shows that some misappropriation occurred.

To illustrate, we recap the relevant facts of Short's case, which presents the most egregious of the misappropriations. In Short's case, the evidence demonstrated that Ekekwe-Kauffman never paid some third-party providers at all, pocketed reductions in fees that should have been passed along to Short, and took more than her share of attorney's fees and expenses. Whether or not she permanently stole

those amounts, her bank records show that she at least temporarily misappropriated over $2750, and her trust account dipped well below that amount for a stretch of time when she still owed it to Short and to third parties on his behalf. In fact, the account balance was repeatedly in the negative during the relevant period between May and June of 2015.

Ekekwe-Kauffman's arguments to the contrary do not actually grapple with the evidence of misappropriation. She stresses that (1) Disciplinary Counsel did not prove she derived any benefit from any purported misappropriations, (2) all of the clients "got paid" eventually, and (3) none of these four clients ever filed a complaint against her. Even if each of those things were true—and the second appears to be false at least with regard to Short's funds—none of them alters the conclusion that Ekekwe-Kauffman misappropriated funds. Misappropriation does not depend on a showing that the attorney derived any benefit from the co-opted funds. *See In re Anderson*, 778 A.2d at 335. Nor does it depend upon a deprivation that is permanent in character or of any particular duration. Even brief misappropriations are misappropriations. *Id.* It also does not matter, nor is it particularly surprising, that none of these clients filed complaints against Ekekwe-Kauffman. In the King, Drew, and Eppright cases, the misappropriation consisted of amounts owed to third parties,

as did some of the misappropriation in Short's case. Whether the clients complained or even noticed the misappropriations is immaterial to the fact that they occurred.

## 2.

Next, Ekekwe-Kauffman takes aim at the Board's finding that she acted recklessly, as opposed to merely negligently, in committing these misappropriations. "[M]isappropriation revealing an unacceptable disregard for the safety and welfare of entrusted funds" constitutes reckless misappropriation. *Id.* at 338; *see also In re Saint-Louis*, 147 A.3d 1147; *In re Ahaghotu*, 75 A.3d 251, 256 (D.C. 2013). As *In re Ahaghotu* explained, some of the "hallmarks" of reckless misappropriation are:

> 'the indiscriminate commingling of entrusted and personal funds'; a 'complete failure to track settlement proceeds'; the 'total disregard of the status of accounts into which entrusted funds were placed, resulting in a repeated overdraft condition'; 'the indiscriminate movement of monies between accounts'; and finally 'the disregard of inquiries concerning the status of funds.'

75 A.3d at 256 (quoting *In re Anderson*, 778 A.2d at 338). Even one instance of misappropriation lasting only a brief period can constitute reckless misappropriation if the attorney misappropriated with "casual indifference in maintaining the security" of the entrusted funds. *Id.* at 255-58 (finding reckless misappropriation where

evidence showed "just one instance of misappropriation—lasting only a day at that").

Ekekwe-Kauffman's handling of entrusted funds evinces practically all of the hallmarks of reckless misappropriation. She commingled funds between her trust and operating accounts repeatedly and indiscriminately. She likewise moved money among her personal, business, and trust accounts, haphazardly covering shortfalls in each account by drawing on the balance of the others. For example, in May 2015 (when some of the relevant misappropriations occurred), Ekekwe-Kauffman transferred $10,000 from her trust account to her operating account and then used the funds in her operating account to make an $18,480.41 payment to a third party on behalf of Serah's Outdoor Adventures & Recreation, a non-legal business she owned. This $10,000 transfer caused her trust fund account balance to drop to around $3300 on May 22. Then when two checks to Eppright's service providers were cashed on May 27, the account became overdrawn by about $750, which Ekekwe-Kauffman remedied with a $900 deposit a couple of days later. Because she "injected personal funds to make up for a low trust account balance, instead of sitting down . . . to figure out what went wrong, it was likely something would go wrong again." *In re Ahaghotu*, 75 A.3d at 257. "[This] commingling of funds only

papered over the problem and, unfortunately, showed a continued lack of interest in tracking what client funds were available at any given moment." *Id.*

Furthermore, the eight overdrafts in Ekekwe-Kauffman's trust accounts over the course of roughly a year show a "pattern or course of conduct demonstrating an unacceptable disregard for the welfare of entrusted funds." *In re Cloud*, 939 A.2d 653, 660 (D.C. 2007). In June of 2014, Disciplinary Counsel sent Ekekwe-Kauffman an inquiry letter concerning a May 2014 notice that her SunTrust trust account was overdrawn by more than $3000 and attached a copy of the relevant D.C. Bar Rule requiring her to maintain complete records of entrusted funds. This was right after her trust account was overdrawn leading to the misappropriation in King's case, so one might have expected her to take the warning to heart and remedy her behavior. However, the Short, Drew, and Eppright misappropriations took place nearly a year later, showing Ekekwe-Kauffman did not meaningfully change her accounting practices to prevent future misappropriations.[4] Like the attorney in *In re Ahaghotu*, Ekekwe-Kauffman "was clearly on notice of problems with [her] accounting practices and [her] escrow account" and yet did not take sufficient action

---

[4] While it is not material to our disposition here, Disciplinary Counsel stresses that Ekekwe-Kauffman's financial records were so incomplete and scattered that the handful of misappropriations it was able to prove by piecing together what few financial records she provided may only scratch the surface of her misappropriations.

to prevent further endangerment of entrusted funds. 75 A.3d at 255. In her testimony, Ekekwe-Kauffman seemed to suggest that her bank statements constituted adequate financial records to track client funds. But Disciplinary Counsel's letter should have disabused her of that belief, long before the Short, Drew, and Eppright misappropriations.

Ekekwe-Kauffman stresses that her "negligent record-keeping" should not warrant a sanction, citing *In re Cloud*, 939 A.2d 653 (D.C. 2007). We do not think that case is of any help to her. In *In re Cloud*, the Board credited an attorney's testimony that he honestly misinterpreted a letter from a third party to indicate that he owed them less than he in fact did. *Id.* at 661. He then drew down an account holding client settlement funds to a point below what was actually owed to the third party, but only because of his honest belief that he owed less. *Id.* Prior to receiving that letter and misinterpreting it, the attorney had kept adequate funds in his accounts to cover the debt. *Id.* We adopted the Board's recommendation that this did not amount to reckless misappropriation because the attorney "did not display the conscious indifference necessary for a finding of recklessness." *Id.* However, we also agreed with the Board that the attorney committed reckless misappropriation when he later discovered his mistake and yet failed to pay the money back for four years. *Id.* at 661-62.

Unlike *In re Cloud*, Ekekwe-Kauffman did not make a one-time mistake leading to a misappropriation that we could chalk up to neglect. She had a practice of commingling funds and repeatedly overdrew accounts holding client funds well below the amounts owed. She insists that everybody eventually "got paid" as if that excuses her misappropriations. It does not. All it does is further underscore that Ekekwe-Kaufmann remains seemingly indifferent to misappropriating funds so long as everybody is eventually paid. Ekekwe-Kauffman's "conscious failure to act" in response to the numerous warning signs—the overdrafts from trust accounts, the letters from Disciplinary Counsel, etc.—and "protect [her] clients from future misappropriation" shows these misappropriations crossed the line from negligent to at least reckless due to her "conscious indifference" to the possibility of future problems. *In re Ahaghotu* 75 A.3d at 258. A defense of "faulty recording-keeping" will not absolve an attorney who knows her recordkeeping is faulty but does not fix the problem. *See In re Smith*, 817 A.2d 196, 202-03 (D.C. 2003) (rejecting Hearing Committee's finding of negligent misappropriation, and adopting the Board's finding of reckless misappropriation, where attorney's repeated misappropriations were "so persistent . . . that his misappropriation was reckless, not merely negligent").

**B.**

We now turn our focus to the appropriate sanction. "[I]n virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence." *In re Addams*, 579 A.2d at 191; *In re Myers*, 114 A.3d 1274, 1279 (D.C. 2015). Only if there are "extraordinary circumstances" will a sanction less than disbarment be appropriate in contested cases of reckless or intentional misappropriation. *In re Hewett*, 11 A.3d 279, 287-90 (D.C. 2011) (highlighting "truly unique" circumstances); *see also In re Mensah*, 262 A.3d 1100 (D.C. 2021) (negotiated-discipline process "permit[s] a somewhat more flexible approach" than what applies to contested cases). There are no "extraordinary circumstances" here that would warrant our departure from the presumptive discipline of disbarment. There is no evidence, for instance, that Ekekwe-Kauffman suffered from a disabling condition that prompted her misconduct. *See In re Kersey*, 520 A.3d 321, 325-27 (D.C. 1987) (disabling condition of chronic alcoholism contributed to the misconduct). Nor is this a circumstance, as in *In re Hewett*, where the misappropriation was committed "for the purpose of benefitting the client, and in fact did benefit the client." 11 A.3d at 282, 286 (prematurely withdrawing attorney's fees from client's account to ensure client did not lose Medicaid eligibility due to an excess of funds in the account).

Ekekwe-Kauffman, aside from arguing that her misappropriations were negligent rather than reckless, does not suggest that any extraordinary circumstances apply here as to merit a departure from the presumptive discipline of disbarment. We see none. Even the "usual sort" of mitigating factors, which tend not to be grounds to depart from a sanction of disbarment unless they are "especially strong," are generally lacking here. *In re Addams*, 579 A.2d at 191. The usual sort of mitigating factors include "(1) an admission of wrongdoing, (2) full cooperation with the disciplinary authorities, (3) prompt return of the disputed funds, and, most importantly, (4) an unblemished record of professional conduct." *In re Edwards*, 990 A.2d at 527 (quoting *In re Pierson*, 690 A.2d 941, 950 (D.C. 1997)). As to those, Ekekwe-Kauffman does not admit to wrongdoing beyond acknowledging that she should "better maintain records." She did not fully cooperate with the disciplinary authorities, as Disciplinary Counsel points out, but generally obstructed the investigation and "produced only minimal financial records, in no discernable order." Some of the misappropriated funds are still unaccounted for and there is no indication they have every been remitted to the rightful party. And Ekekwe-Kauffman does not have an unblemished disciplinary record, but instead is already in the midst of serving a three-year suspension.

**IV.**

Accordingly, it is ORDERED that Ekekwe-Kauffman is hereby disbarred from the practice of law in the District of Columbia. Inasmuch as Ekekwe-Kauffman's right to practice law in the District has been and remains suspended in another matter, this order of disbarment is effective immediately. For purposes of reinstatement, however, the period of Ekekwe-Kauffman's disbarment shall not begin to run until such time as she files an affidavit in compliance with D.C. Bar R. XI, § 14(g). *See* D.C. Bar R. XI, § 16(c).

*So ordered.*