In re Keith J. SMITH, Respondent.

**A Member of the Bar of the District of Columbia Court of Appeals (Bar Registration No. 415529).**

No. 10–BG–1479.

District of Columbia Court of Appeals.

Submitted March 7, 2013.
Decided July 25, 2013.

Tony Sangiamo, of the bar of the State of Pennsylvania, pro hac vice, by special leave of the court, was on the brief for appellant.

Wallace E. Shipp, Jr., Bar Counsel, Judith Hetherton, Senior Assistant Bar Counsel, and Joseph N. Bowman, Assistant Bar Counsel, were on the brief for Bar Counsel.

Before THOMPSON and McLEESE, Associate Judges, and RUIZ, Senior Judge.

PER CURIAM:

The District of Columbia Court of Appeals Board on Professional Responsibility recommends that attorney Keith J. Smith be disbarred for violating numerous District of Columbia Bar Rules. We accept the Board's recommendation.

### I.

Bar Counsel brought charges against Mr. Smith based on his conduct in four different matters. After holding an evidentiary hearing, the Hearing Committee issued findings of fact and conclusions of law. Neither Mr. Smith nor Bar Counsel took exception to the Hearing Committee's findings of fact, and the Board accepted the findings in their entirety. The Hearing Committee found the following.

In the first matter, Shelia Henderson retained Mr. Smith in connection with the estate of her mother. The primary asset of that estate was a residence owned by Ms. Henderson's grandmother, who had recently died intestate. During the representation, Mr. Smith failed to communicate adequately with Ms. Henderson and failed to perform other basic tasks, such as opening her grandmother's estate, petitioning for appointment of Ms. Henderson as personal representative of her mother's estate, and timely providing an inventory of the property in her mother's estate. Ms. Henderson dismissed Mr. Smith, but he did not withdraw as her attorney of record until nearly two years later. After his dismissal, but before he had withdrawn as Ms. Henderson's attorney of record, Mr. Smith was retained by Ms. Henderson's aunt, Elnora Baker, to administer Ms. Henderson's grandmother's estate, despite the potential conflict of interest between Ms. Henderson and Ms. Baker with regard to the assets of Ms. Henderson's grandmother's estate. Mr. Smith filed a counterclaim against Ms. Henderson on behalf of Ms. Baker when Mr. Smith was still Ms. Henderson's attorney of record in the matter of her mother's estate. Mr. Smith did not notify Ms. Henderson about the conflict of interest or obtain her informed consent or waiver.

In representing Ms. Henderson, Mr. Smith violated the bar rules that require an attorney to provide competent representation, to serve clients with skill and care, to represent clients zealously and diligently, to withdraw from a representation if that representation will violate a bar rule, to withdraw from a representation if discharged, and not to represent conflicting interests or interests adverse to a former client. *See* D.C. Bar R. 1.1(a), 1.1(b), 1.3(a), 1.7(a), 1.7(b)(1), 1.7(b)(2), 1.7(b)(3), 1.9, 1.16(a)(1), 1.16(a)(3).

The second matter arose after Roena Hawk and Marcel Malloy successfully bid on a property at a District of Columbia tax sale. Ms. Hawk and Mr. Malloy retained Mr. Smith to perform a title search and to foreclose the right of redemption on the

property. Mr. Smith filed an action to foreclose and sent a letter to the mortgage holder, Washington Mutual Home Loans, requesting a $2,220 payment to cover attorney's fees, the title-search fee, and other costs. Mr. Smith did not request that Washington Mutual send the delinquent taxes directly to him. Washington Mutual sent two checks to Mr. Smith's office for $3,225.49 and $2,216.13, made payable to "Keith J. Smith, Esquire." The checks bore no identifying information relating to the tax-sale purchase, and Mr. Smith did not know what the checks were for when he received them. Mr. Smith deposited both checks into his trust account.

On April 7, 2004, a little more than five months after Mr. Smith had received the checks, Washington Mutual contacted Mr. Smith to tell him that the checks related to the tax-sale purchase. Of the total amount, Ms. Hawk and Mr. Malloy were entitled to approximately $1,350 as a refund for the fees they had already paid to Mr. Smith, and the District of Columbia was entitled to $3,225.49 for delinquent taxes.

Before he learned why Washington Mutual had sent him the funds, Mr. Smith wrote at least thirty-one checks to himself or to "cash" out of the trust account and failed to keep adequate records of the funds. On six occasions, the balance in the trust account fell below the total that was owed to the District of Columbia and to Ms. Hawk and Mr. Malloy, and at one point the account balance was negative. In addition, Mr. Smith did not keep Ms. Hawk and Mr. Malloy informed about the status of the case, and he failed to respond promptly to their communications.

After learning what the checks were for, Mr. Smith waited four additional weeks before he paid the delinquent taxes to the District of Columbia. He did not disburse the remaining funds to Ms. Hawk and Mr. Malloy until November 15, 2004, more than seven months after Washington Mutual explained why it had sent the checks.

In representing Ms. Hawk and Mr. Malloy, Mr. Smith violated the bar rule that prohibits misappropriation of entrusted funds and the bar rules that require an attorney to represent clients competently and diligently, to act with reasonable promptness, to keep clients reasonably informed, to respond promptly to reasonable requests for information, and to promptly disburse client funds. *See* D.C. Bar R. 1.1(a), 1.1(b), 1.3(a), 1.3(c), 1.4(a), 1.15(a), 1.15(b). Notably, the Hearing Committee determined that Mr. Smith's misappropriation of funds had not been intentional or reckless.

The third matter also related to a tax-sale case. After successfully bidding on a property at a District of Columbia tax sale, Deborah L. Smith hired Mr. Smith to conduct a title search and to foreclose the right of redemption. Mr. Smith filed an action to foreclose and later sought a default judgment. The trial court denied the motion, because Mr. Smith failed to include a copy of the tax certificate and proof or affidavit of publication. The court stated that the action would be dismissed unless Mr. Smith provided such documentation. Mr. Smith filed an amended motion for default judgment, but he again failed to provide proof or affidavit of publication and failed to establish service for one of the lien holders. The trial court, accordingly, dismissed the action without prejudice.

In representing Ms. Smith, Mr. Smith violated the bar rules that require an attorney to provide competent representation and to represent clients zealously and diligently. *See* D.C. Bar R. 1.1(a), 1.3(a).

In the fourth matter that the Hearing Committee investigated, Mr. Smith's business co-owner filed a complaint for possession and back payment of rent against Mr.

Smith. Mr. Smith filed a praecipe in court in which he stated, falsely and with intent to deceive, that the parties had reached a settlement and had consented to dismissal with prejudice. Mr. Smith's purpose in filing the praecipe was personal gain. Relying on the false praecipe, the trial court dismissed the case. The court later reinstated the case when it discovered what Mr. Smith had done, and ultimately entered judgment against Mr. Smith. Mr. Smith's conduct in this matter violated the bar rules that prohibit an attorney from knowingly making a false statement to a tribunal, from engaging in dishonesty, fraud, deceit, or misrepresentation, and from seriously interfering with the administration of justice. *See* D.C. Bar R. 3.3(a)(1), 8.4(c), 8.4(d).

The Hearing Committee found, additionally, that Mr. Smith did not show mitigating circumstances in the four matters, and it determined that Mr. Smith's actions caused prejudice to his clients and to others. The Hearing Committee recommended that Mr. Smith be suspended from the practice of law for eighteen months without a fitness requirement for reinstatement. Mr. Smith did not object to that recommendation. The Board, however, concluded that the Hearing Committee's factual findings in the matter of Ms. Hawk and Mr. Malloy established that Mr. Smith had recklessly misappropriated client funds. The Board therefore recommended disbarment.

## II.

 Because the parties do not dispute the Hearing Committee's findings of fact, our primary inquiry is whether Mr. Smith's misappropriation of client funds was reckless or merely negligent. Mr. Smith does not dispute that he committed misappropriation by withdrawing funds that he owed to Ms. Hawk and Mr. Malloy and using those funds for himself.[1] The Board views that misappropriation as reckless, whereas Mr. Smith contends that his conduct was merely negligent. Reckless misappropriation requires "either an intent to treat the funds as the attorney's own or a conscious indifference to the consequences of [the attorney's] behavior for the security of the funds." *In re Anderson*, 778 A.2d 330, 339 (D.C.2001). We review de novo whether the facts, as determined by the Hearing Committee, constitute reckless misappropriation or negligent misappropriation. *See In re Pierson*, 690 A.2d 941, 947 (D.C.1997); *In re Micheel*, 610 A.2d 231, 234–35 (D.C. 1992).

Mr. Smith has not claimed a good-faith belief that he was entitled to the funds. *See, e.g., In re Haar*, 698 A.2d 412, 422–25 (D.C.1997) (finding negligence and ordering thirty-day suspension where lawyer had good-faith belief that he was entitled to misappropriated funds). To the contrary, the Hearing Committee's findings of fact establish that Mr. Smith either thought the funds belonged to someone else or simply did not know to whom they belonged. The Hearing Committee found that Mr. Smith "did not know what the checks were for when they arrived"; that Mr. Smith "knew that someone had sent him the checks for some reason, and he knew the money needed to be safeguarded until he could determine why he received the checks"; and that Mr. Smith initially

---

1. "[M]isappropriation is any unauthorized use of client's funds entrusted to [the lawyer], including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not [the lawyer] derives any personal gain or benefit therefrom." *In re Harrison*, 461 A.2d 1034, 1036 (D.C.1983) (internal quotation marks omitted). Misappropriation occurs if an attorney permits the balance in an account that contains client funds to fall below the amount owed to the client. *In re Micheel*, 610 A.2d 231, 233 (D.C. 1992).

"treated [the checks] as funds which he was obligated to safeguard for clients or third persons." When Mr. Smith wrote checks from the account to himself and to "cash," he was therefore well aware of the possibility that he was appropriating client funds for personal use.

Other factors also indicate recklessness rather than negligence. Mr. Smith wrote thirty-one checks to himself and failed to keep adequate records, even overdrawing the account at one point. *See In re Pels,* 653 A.2d 388, 395–96 (D.C.1995) (large number of personal checks drawn from account and attorney's failure to maintain records of the flow of funds were aggravating factors that supported a conclusion of reckless, rather than negligent, misappropriation); *Micheel,* 610 A.2d at 235–36 (finding reckless disregard where attorney "made no attempt to keep track of his client's funds, but indiscriminately wrote checks on the account at a time when he knew or should have known that the account was overdrawn"). In addition, Mr. Smith waited seven months to disburse the funds after he learned that his clients were entitled to them; in fact, Mr. Smith failed to demonstrate to the Hearing Committee that he ever returned all of the misappropriated funds. *See In re Cloud,* 939 A.2d 653, 661 (D.C.2007) ("However reasonable it may have been for him to take those fees initially, the fact remains that he unjustifiably refused to disgorge the fees with anything like reasonable promptness after he learned that he was not entitled to keep them. It is this conduct that supports the Board's finding of recklessness and its recommendation of disbarment."); *In re Utley,* 698 A.2d 446, 449–50 (D.C. 1997) (where initial taking of funds was "an honest mistake," twenty-one month delay in returning funds was aggravating factor supporting finding of recklessness). Taken together, the Hearing Committee's factual findings establish that Mr. Smith exhibited "a conscious indifference to ...

the security of the funds." *Anderson,* 778 A.2d at 339. Accordingly, we adopt the Board's conclusion that Mr. Smith engaged in reckless misappropriation of client funds.

Mr. Smith argues that his actions were less objectionable than the conduct in *Anderson,* a case in which this court found that the misappropriation was not reckless and ordered suspension for six months. 778 A.2d at 342. The court in *Anderson,* however, expressly noted that "[t]he aggravating factors beyond poor record-keeping which the court has found indicative of recklessness are not present in this case: ... [Anderson] did not indiscriminately write checks on the operating account; and he did not write checks that were dishonored or that caused the account to be in overdraft." *Id.* at 340. Here, Mr. Smith wrote at least thirty-one checks either to himself or to "cash" while the funds were in the trust account. The account fell to a negative balance at one point and to a balance lower than $400— far less than the sum that Mr. Smith owed to his clients and to the District of Columbia—at least six times.

Mr. Smith objects that the Board mischaracterized one of the Hearing Committee's factual findings as determining that Mr. Smith knew that the funds belonged to one or more of his clients, when in fact the Hearing Committee found that Mr. Smith knew that the funds had to be safeguarded for a client or a third party. Any imprecision in the Board's statement on that point is inconsequential. As we have explained above, the Hearing Committee's findings of fact, by themselves, establish that Mr. Smith engaged in reckless misappropriation. For the same reason, we see no ground for relief based upon Mr. Smith's argument that the Board impermissibly relied on assertions in Mr. Smith's answer as evidence that he knew the checks belonged to one of his clients.

 Disbarment is normally the appropriate sanction when an attorney has intentionally or recklessly misappropriated client funds. *In re Addams,* 579 A.2d 190, 191 (D.C.1990) (en banc) ("[I]n virtually all cases of misappropriation, disbarment will be the only appropriate sanction unless it appears that the misconduct resulted from nothing more than simple negligence."). Here the Hearing Committee found no mitigating circumstance, and Mr. Smith does not challenge that finding. We note, instead, the presence of several aggravating circumstances.

As described above, the Hearing Committee found that Mr. Smith violated numerous bar rules, some of them on multiple occasions. To reiterate a few of the violations: Mr. Smith failed to provide competent representation in two matters and failed to represent his clients diligently in three matters; he violated conflict-of-interest rules by—among other actions—filing a counterclaim in a civil case against his client while he was still the attorney of record in her closely related probate case; and, fraudulently and for personal gain, he filed a false praecipe that caused a trial court to dismiss a lawsuit against him. Mr. Smith does not challenge any of these findings.

Taking into account Mr. Smith's reckless misappropriation of client funds and the additional aggravating factors, we conclude that the Board's recommendation of disbarment would not "foster a tendency toward inconsistent dispositions for comparable conduct." D.C. Bar R. XI, § 9(h). *See, e.g., Micheel,* 610 A.2d at 237; *Cloud,* 939 A.2d at 664.

For the reasons set forth above, Mr. Smith is disbarred from the practice of law in the District of Columbia, effective thirty days from the date of this opinion. Mr. Smith must comply with the affidavit requirement of District of Columbia Bar Rule XI, § 14(g), within ten days of the effective date of this opinion, and the period during which he may not seek reinstatement will run from the date of his compliance with that rule. *See* D.C. Bar R. XI, § 16(c).

*So ordered.*