*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-BG-555

IN RE BILLY L. PONDS, RESPONDENT.
A Member of the Bar of the
District of Columbia Court of Appeals
(Bar Registration No. 379883)

On Report and Recommendation
of the Board on Professional Responsibility
(DDN-377-11; BDN 17-BD-15)

(Argued November 9, 2021                    Decided August 4, 2022)

*Barry Coburn*, with whom *Kimberly Jandrain* was on the brief, for respondent.

*Myles V. Lynk*, Senior Assistant Disciplinary Counsel, with whom *Hamilton P. Fox, III*, Disciplinary Counsel, and *Dolores Dorsainvil*, Assistant Disciplinary Counsel, were on the brief, for Disciplinary Counsel.

Before GLICKMAN and MCLEESE, *Associate Judges*, and FERREN, *Senior Judge*.

PER CURIAM: A Hearing Committee concluded that respondent Billy L. Ponds committed several violations of the Rules of Professional Conduct, including

reckless misappropriation of client funds. The Hearing Committee recommended that Mr. Ponds be disbarred. The Board on Professional Responsibility agreed with the Hearing Committee's conclusions in some respects but concluded that Mr. Ponds's misappropriation of client funds was negligent rather than reckless. The Board therefore recommended that Mr. Ponds be suspended from the practice of law for nine months. We agree with the Hearing Committee that Mr. Ponds recklessly misappropriated client funds. We therefore disbar Mr. Ponds.

## I.

The record before the Hearing Committee and the Board addresses a number of alleged violations involving two different clients. For current purposes, it suffices to focus on the allegation that Mr. Ponds recklessly misappropriated client funds belonging to Joseph Young, by impermissibly failing to treat an unearned flat fee as client property. It is undisputed that Mr. Ponds misappropriated client funds. The sole issue is whether he did so recklessly or instead only negligently.

**A.**

Flat fees paid to attorneys in advance must ordinarily be treated as client funds until they are earned. *In re Mance*, 980 A.2d 1196, 1202 (D.C. 2009). Such flat fees therefore must ordinarily be held in a trust account or escrow account. *Id.* A client can consent to different treatment of flat fees, as long as the client's consent is informed. *Id.* at 1204.

Informed consent requires an attorney to discuss the "material risks of and reasonably available alternatives to the proposed course of conduct." *In re Mance*, 980 A.2d at 1206 (internal quotation marks omitted). To satisfy this requirement in connection with a flat-fee agreement, the attorney must "expressly communicate to the client verbally and in writing" that (1) "the attorney will treat the advance fee as the attorney's property upon receipt;" (2) "the attorney can keep the fee only by providing a benefit or providing a service for which the client has contracted;" (3) "the fee agreement must spell out the terms of the benefit to be conferred upon the client;" (4) "the client must be aware of the attorney's obligation to refund any amount of advance funds to the extent that they are unreasonable or unearned if the representation is terminated by the client"; and (5) "unless there is agreement otherwise, the attorney must . . . hold the flat fee in escrow until it is earned by the

lawyer's provision of legal services." *Id.* at 1206-07 (internal quotation marks omitted).

**B.**

Except as indicated, the following facts appear to be undisputed in this court. After this court's decision in *In re Mance*, Mr. Ponds revised his standard fee agreement. The revised standard agreement stated that flat fees paid under the agreement are non-refundable and are the property of the attorney; the client waives any property interest in such fees; and the client waives the requirement that such fees be placed in escrow. The agreement also advised clients that Mr. Ponds was not required to maintain a record of the hours he expended in cases involving a flat fee.

Mr. Young subsequently hired Mr. Ponds to represent him in a criminal matter that had not yet resulted in charges. The two entered into a fee agreement requiring Mr. Young to pay Mr. Ponds a $20,000 flat fee to represent Mr. Young, with an additional $10,000 fee if a trial date was set.

The fee agreement between Mr. Ponds and Mr. Young described the flat fee as non-refundable. It further provided that Mr. Ponds was not required to keep a record of the time he spent working on Mr. Young's case; that the flat fee was the exclusive property of Mr. Ponds; that Mr. Young waived any claim of property interest in the flat fee; and that Mr. Young agreed that the flat fee would not be placed in an escrow account. The fee agreement did not advise Mr. Young that Mr. Ponds could keep the flat fee only if Mr. Ponds provided the agreed-upon services or that Mr. Ponds was required to return the flat fee if it was unreasonable or unearned. The fee agreement also did not explain what an escrow account is or the benefits of keeping client funds in such an account.

Although there was somewhat conflicting testimony about the discussion between Mr. Ponds and Mr. Young concerning the fee agreement, the Hearing Committee concluded that Mr. Ponds did not discuss with Mr. Young "the topics . . . required for informed consent."

Mr. Young and his wife paid Mr. Ponds the $20,000 fee. Mr. Ponds treated the flat fee as if it had been earned, placing it into several accounts. The balance of one of those accounts fell well below the payments from the Youngs that had been placed into the account.

Mr. Ponds subsequently met with Mr. Young several times over the next few months. There was a dispute about the length of those meetings. Mr. Ponds had brief notes about two such meetings and one telephone call, but he kept no time records of his work on the case.

Mr. Young eventually was arrested and charged. Mr. Ponds then demanded an additional $30,000 to represent Mr. Young. The Youngs could not pay the additional $30,000, so they asked Mr. Ponds to refund the $20,000 flat fee. Mr. Ponds refused to do so, instead taking the position that the entire flat fee had been earned as soon as Mr. Ponds did any work on Mr. Young's case. Mr. Ponds refused to enter an appearance in the criminal matter, and a court-appointed attorney represented Mr. Young.

The Youngs sought to get the flat fee back from Mr. Ponds, by taking the matter to the Attorney-Client Arbitration Board. The Arbitration Board awarded the Youngs the entire flat fee, with interest. Mr. Ponds unsuccessfully moved to vacate the arbitration award in Superior Court. Mr. Ponds nevertheless did not pay the arbitration award. Disciplinary Counsel represented at oral argument that Mr. Ponds still had not returned the flat fee.

## C.

The Hearing Committee concluded that Mr. Ponds misappropriated Mr. Young's client funds, by spending an unearned flat fee as though it was Mr. Ponds's property. The Hearing Committee acknowledged that *In re Mance* permits unearned flat fees to be treated as the attorney's property in some respects, as long as the client has given informed consent. The Hearing Committee concluded, however, that Mr. Ponds had not obtained informed consent. Specifically, the fee agreement (1) failed to explain that Mr. Ponds would refund any unearned portion of the flat fee; (2) did not advise Mr. Young that Mr. Ponds would otherwise have been obliged to place the flat fee in an escrow account; and (3) did not explain what an escrow account is or what the risks to the client are when client funds are not kept in an escrow account. In the Hearing Committee's view, the fee agreement failed to tell Mr. Young "the very things the Court . . . identified as essential to obtaining informed consent." The Hearing Committee found that Mr. Ponds did not orally communicate the required information to obtain informed consent.

The Hearing Committee concluded that Mr. Ponds's misappropriation was reckless rather than merely negligent. As the Hearing Committee explained, *In re Mance* provided a detailed explanation of what was required to obtain informed

consent. Mr. Ponds was aware of *In re Mance*, but rather than complying with its requirements Mr. Ponds framed his fee agreement so as to ensure that his clients would consent to Mr. Ponds taking their flat fees as his upon payment. The Hearing Committee did not decide whether Mr. Ponds was intentionally disregarding the requirements of *In re Mance*, instead concluding that the fee agreement was at least reckless and did not "reflect a good faith misunderstanding of *Mance*."

Having found reckless misappropriation, the Hearing Committee recommended disbarment.

## D.

The Board adopted the Hearing Committee's findings of fact and agreed with the Hearing Committee that Mr. Ponds had misappropriated client funds belonging to Mr. Young. The Board concluded, however, that Mr. Ponds's misappropriation was negligent rather than reckless. In the Board's view, Mr. Ponds's misappropriation was based on a good-faith misunderstanding of *In re Mance,* because Mr. Ponds (1) tried to bring his fee agreement into compliance after reviewing *In re Mance*, reviewing other attorneys' fee agreements, and discussing the issue with other attorneys; (2) believed that the fee agreement's language reduced

*In re Mance*'s complicated language to something his clients would understand; and (3) simply made a mistake of law.

## II.

The proper resolution of this case turns on whether Mr. Ponds's conceded misappropriation was merely negligent -- i.e., reflected a good-faith but inadequate effort to comply with the requirements of *In re Mance* -- or instead was reckless, i.e., reflected, at a minimum, "conscious indifference" to those requirements. *In re Smith*, 70 A.3d 1213, 1216 (D.C. 2013) (per curiam) (brackets and internal quotation marks omitted). Disciplinary Counsel has the burden to prove recklessness by clear and convincing evidence. *In re Gray*, 224 A.3d 1222, 1228 (D.C. 2020) (per curiam). This court and the Board must accept the Hearing Committee's findings of fact if those findings are supported by substantial evidence. *Id.* We decide de novo whether given facts support a conclusion of recklessness. *Id.*

The Hearing Committee, which heard Mr. Ponds's testimony, determined that the fee agreement did not reflect a good-faith effort to comply with the requirements of *In re Mance.* As an original matter, one might view that determination as a finding of fact to which this court and the Board should ordinarily defer. *See generally, e.g.,*

*Bridgforth v. Gateway Georgetown Condo Ass'n. Inc.*, 214 A.3d 971, 977 (D.C. 2019) ("A trial court's finding as to good faith is a factual determination that we review for clear error."). Our attorney-discipline cases, however, indicate that this court will decide de novo issues of "ultimate fact," such as whether misappropriation was reckless or instead negligent. *E.g.*, *In re Gray*, 224 A.3d at 1228. Moreover, Disciplinary Counsel has not asked this court to give deference to the Hearing Committee's determination that the fee agreement did not reflect good faith. Finally, the Hearing Committee's view about Mr. Ponds's state of mind is not entirely clear, because the Hearing Committee stated as a finding of fact that Mr. Ponds believed that his fee agreement was consistent with the requirements of *In re Mance*. We therefore consider de novo whether Mr. Ponds's misappropriation was reckless or instead merely negligent.

We agree with the Hearing Committee's determination that Mr. Ponds's misappropriation was at a minimum reckless. *In re Mance* is not clear in all respects. *See In re Haar*, 270 A.3d 286, 295 (D.C. 2022) (*In re Mance* is unclear about whether attorneys were required to apply its requirements retroactively to funds received from clients before *In re Mance* was decided). On the issues raised in this case, though, *In re Mance* is quite clear: (1) flat fees paid in advance are client property and must be treated accordingly unless the client gives informed consent to

a different arrangement; (2) informed consent requires an attorney to discuss the "material risks of and reasonably available alternatives to the proposed course of conduct"; and (3) to obtain informed consent in this context, an attorney must "expressly communicate to the client verbally and in writing" five specific pieces of information. *In re Mance*, 980 A.2d at 1206-07 (internal quotation marks omitted); see also *supra* pp. 3-4 (listing five required disclosures).

Mr. Ponds's fee agreement and his conduct in this case are fundamentally incompatible with the requirements of *In re Mance*. Rather than making clear that the unearned portion of a flat fee must be returned, the fee agreement indicated precisely the opposite. Rather than complying with the requirement to return unearned advance fees, Mr. Ponds refused, despite an arbitral award requiring him to comply. As the Hearing Committee explained, the fee agreement also omits other topics specifically required by *In re Mance*, and neither the fee agreement nor Mr. Ponds's discussion with Mr. Young provided the information that would have been necessary for Mr. Young to have given informed consent.

We view it as quite implausible that an attorney who was trying in good faith to comply with the requirements of *In re Mance* would have drafted the fee agreement in this case or would have acted as Mr. Ponds has acted in this case. We

need not rest, however, on a conclusion of subjective bad faith. Even assuming that Mr. Ponds may have subjectively believed that the fee agreement and his conduct were permissible, we think it quite clear that Mr. Ponds at a minimum demonstrated "conscious indifference" to the requirements of *In re Mance*. *See, e.g.*, *In re Gray*, 224 A.3d at 1232 ("Reckless misconduct requires a conscious choice of a course of action, either with knowledge of the danger to others involved in it or with knowledge of facts that would disclose this danger to any reasonable person." (internal quotation marks omitted); s*ee also, e.g.*, *In re Cloud*, 939 A.2d 653, 661 (D.C. 2007) (holding that attorney's failure to pay client "back within a reasonable time after discovering [attorney's] error" supports finding of reckless misappropriation); *In re Anderson*, 778 A.2d 330, 339 (D.C. 2001) (reckless misappropriation may be shown by proof of "a pattern or course of conduct demonstrating an unacceptable disregard for the welfare of entrusted funds").

We are not persuaded by Mr. Ponds's argument that, to the contrary, his failure to comply with the requirements of *In re Mance* was simply a good-faith but perhaps negligent mistake of law. For the reasons we have already explained, we conclude that Mr. Ponds's failure to comply with the requirements of *In re Mance* reflected more than an understandable mistake of law that could be viewed as merely negligent. *Cf. In re Gray*, 224 A.3d at 1232 ("[W]e have never held that an

attorney's assertion of a good faith belief . . . will preclude a finding of reckless misappropriation where that belief was objectively unreasonable.").

**III.**

"Disbarment is normally the appropriate sanction when an attorney has intentionally or recklessly misappropriated client funds." *In re Smith*, 70 A.3d at 1218. Mr. Ponds does not dispute that disbarment is required if he is determined to have recklessly misappropriated client funds belonging to Mr. Young. We therefore conclude that Mr. Ponds must be disbarred. In light of that disposition, we need not address the other alleged disciplinary violations in this case. *See, e.g.*, *In re Kanu*, 5 A.3d 1, 17 n.4 (D.C. 2010) ("[T]he decision to disbar [the] attorney because of misappropriation of funds makes it unnecessary to consider an additional rule violation.") (internal quotation marks omitted).

Respondent Billy L. Ponds is hereby disbarred from the practice of law in the District of Columbia. For the purposes of reinstatement, the period of disbarment will begin to run when Mr. Ponds has filed an affidavit demonstrating full compliance with District of Columbia Bar Rule XI, § 14(g).

*So ordered.*